**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

GALLUP MED FLIGHT, LLC.,

     Plaintiff,

vs.

                                   No. CIV 16-1234 JB/LF

BUILDERS TRUST OF NEW MEXICO,

     Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant Builders Trust of New Mexico's Partial Motion to Dismiss, filed November 17, 2016 (Doc. 4)("MTD"); and (ii) Plaintiff's Motion for Judgment on the Pleadings, filed December 6, 2016 (Doc. 10)("Motion for Judgment"). The Court held a hearing on January 23, 2017. The primary issue is whether federal subject-matter jurisdiction exists where, as is the case here, a complaint asserts federal preemption of state workers' compensation regulation as the primary ground for entitlement to recovery. Because the Court concludes that Defendant Builders Trust of New Mexico has not established federal-question jurisdiction over Plaintiff Gallup Med Flight, LLC's, state law contract claims against it, the Court will remand this case to the Eleventh Judicial District Court, County of McKinley, State of New Mexico, where it was originally filed, for further state court proceedings.

## FACTUAL BACKGROUND

The Court next sets out the factual background for this case. Given the different standards for ruling on a MTD and a Motion for Judgment, the Court presents a different set of facts tailored to each of the different motions. The factual background is as follows.

1.      **MTD Facts.**

The Court takes its following recitation of the facts from Med Flight's Complaint for Debt and Money Due and Breach of Contract, filed November 10, 2016 (Doc. 1-4)("Complaint").  The Court does not set forth these facts as findings or the truth.  The Court recognizes that the factual background is largely Med Flight's version of events.

According to the Complaint, the Plaintiff, Med Flight, is a company with its principal place of business in Gallup, New Mexico, and the Defendant, Builders Trust, is a workers' compensation insurance company doing business in New Mexico.  See Complaint ¶¶ 1-2, at 1. The Complaint then alleges, as background, that on or about October 5, 2015, "Michael Woods," a "Murphy Builders" employee, received emergency medical treatment at Rehoboth McKinley Christian Health Care Services Emergency Department ("Rehoboth Health"), in Gallup, New Mexico, for a work-related injury.  Complaint ¶ 4, at 1.  The Complaint alleges that Builders Trust provides "workers' compensation insurance" to Woods' employer, Murphy Builders. Complaint ¶ 5, at 1.

The Complaint explains that Physician Assistant Floyd Bodden, PA-C, at Rehoboth Health was unable to treat Woods' medical condition, and thus Doctor Kenneth Kelly, MD, authorized his transfer to University of New Mexico Hospital ("UNMH").  See Complaint ¶ 6, at 2.  For Woods' transport, Med Flight's "fixed wing aircraft" service was retained as the medivac from Rehoboth Health to UNMH.  Complaint ¶ 7, at 2.  The Complaint further alleges that Med Flight's transport of Woods proceeded safely and in accordance with federal law.  See Complaint ¶ 8, at 2.  The controlling federal law, according to the Complaint, is the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA"), and the regulations implementing the EMTALA and regarding "Centers of Medicare and Medicaid Services

('CMS')," found at 42 C.F.R. § 489.24.  Complaint ¶¶ 10-11, at 2.  The Complaint provides that

the CMS regulations mandate that

> it is the treating physician at the transferring hospital who decides how the individual is transported to the recipient hospital and what transport service will be used, since this physician has assessed the individual personally.  The transferring hospital is required to arrange transport that minimizes the risk to the individual who is being transferred, in accordance with the requirements of § 489.24[(e)(2)(iv)].

Complaint ¶ 11, at 2 (alteration in original).  Here, the Complaint indicates that Med Flight

"provides critical emergency air transportation," that Med Flight operates under a certificate

from the Federal Aviation Administration ("FAA") and constitutes an "air carrier" under "the

Airline Deregulation Act . . . , Pub. L. No. 95-504, 92 Stat. 1705 (1978)," and that Bodden at

Rehoboth Health "completed and signed a MEDICAL NECESSITY TRANSPORT FORM"

when deciding to transport Woods to UNMH.  Complaint ¶¶ 12-14, at 2-3.  The Complaint thus

explains that, under the Airline Deregulation Act ("Airline Act"), "it is in the public interest to

place maximum reliance on competitive market forces and on actual and potential competition

(A) to provide the needed air transportation system, and (B) to encourage efficient and well-

managed carriers to earn adequate profits and to attract capital," Complaint ¶ 15, at 3 (internal

quotation marks omitted), and that, "[t]o prevent state interference with this objective, Congress

included a preemption provision in the [Airline Act] that prohibits a State from enacting or

enforcing any statute, regulation or other provision of law 'related to a price, route, or service of

an air carrier,'" Complaint ¶ 16, at 3 (quoting 49 U.S.C. § 41713(b)).  According to the

Complaint, the United States Department of Transportation ("DOT") takes the position that the

Airline Act's "preemption provision applies to the field of air ambulance services," Complaint ¶

17, at 3, and Med Flight, in particular, is chosen for its "favorable estimated transport times,"

Complaint ¶ 18, at 3.

1.      <u>**Motion for Judgment Facts**</u>.

The Court takes its following recitation of the facts from (i) Med Flight's Motion for Judgment; (ii) Defendant Builders Trust of New Mexico's Response to Plaintiff's Motion for Judgment on the Pleadings, filed December 19, 2016 (Doc. 14)("Motion for Judgment Response"); and (iii) Gallup Med Flight, LLC's Reply in Support of Motion for Judgment on the Pleadings [Doc. 10], filed January 5, 2017 (Doc. 16)("Motion for Judgment Reply").  The Motion for Judgment sets forth these facts as its proffer of "Material Facts," Motion for Judgment at 1-6, which the Motion for Judgment Response then, in part, disputes, <u>see</u> Motion for Judgment Response at 1-6.  The Motion for Judgment Response first explains that the Motion for Judgment does not, as is required for a "motion for judgment on the pleadings," set forth "the material facts contained in the pleadings," and, instead, makes a "statement of material facts [that] is replete with new, unsubstantiated assertions . . . [and thus] the Court should convert Plaintiff's Motion into a motion for summary judgment."  Motion for Judgment Response at 1-2. In the Motion for Judgment Reply, Med Flight "acknowledges that it is the Court's prerogative to consider matters outside the pleadings, attached as exhibits by either party, and thereby convert [Med Flight]'s Motion to a Motion for Summary Judgment."  Motion for Judgment Reply at 2 n.2 (citing <u>Hartford Cas. Ins. Co. v. Trinity Universal Ins. Co.</u>, 158 F. Supp. 3d 1183, 1196 (D.N.M. 2015)(Vázquez, J.)).  The Motion for Judgment Response thus purports to dispute certain facts in the Motion for Judgment's proffer and then sets forth six primary facts that Builders Trust considers "disputed."  Motion for Judgment Response at 1-6.  Given Med Flight's acquiescence to the notion that it is the Court's prerogative to treat its Motion for Judgment as a motion for summary judgment, <u>see</u> Motion for Judgment Reply at 2 n.2, the Court will address the Motion for Judgment in that manner by, to the best of its ability, construing the motions

appropriately.  The Court thus provides its second recitation of the facts for the purposes of the

Motion for Judgment by setting forth the universe of undisputed facts upon which the movant,

Med Flight, asserts it is entitled to summary judgment as a matter of law.  See D.N.M.L.R. of

Civil Procedure 56.1(b).[1]

---

[1]Rule 56.1(b) provides:

The moving party must file with the motion a written memorandum containing a
short, concise statement of the reasons in support of the motion with a list of
authorities relied upon (the "Memorandum").  A party opposing the motion must
file a written memorandum containing a short, concise statement of the reasons in
opposition to the motion with authorities (the "Response").  The moving party
may file a written reply memorandum with authorities (the "Reply").

> • The Memorandum must set out a concise statement of all of the
> material facts as to which the movant contends no genuine issue
> exists.  The facts must be numbered and must refer with
> particularity to those portions of the record upon which the movant
> relies.

> • The Response must contain a concise statement of the material
> facts cited by the movant as to which the non-movant contends a
> genuine issue does exist.  Each fact in dispute must be numbered,
> must refer with particularity to those portions of the record upon
> which the non-movant relies, and must state the number of the
> movant's fact that is disputed.  All material facts set forth in the
> Memorandum will be deemed undisputed unless specifically
> controverted.  The Response may set forth additional facts other
> than those which respond to the Memorandum which the non-
> movant contends are material to the resolution of the motion.  Each
> additional fact must be lettered and must refer with particularity to
> those portions of the record upon which the non-movant relies.

> • The Reply must contain a concise statement of those facts set
> forth in the Response which the movant disputes or to which the
> movant asserts an objection.  Each fact must be lettered, must refer
> with particularity to those portions of the record upon which the
> movant relies, and must state the letter of the non-movant's fact.
> All material facts set forth in the Response will be deemed
> undisputed unless specifically controverted.

D.N.M.L.R. 56.1(b).

Med Flight, is a company with its principal place of business in Gallup, New Mexico. See Motion for Judgment ¶ 1, at 1 (setting forth this fact); Motion for Judgment Response at 1 (not disputing this fact). Med Flight provides "fixed and rotary wing aircraft" ambulatory services in New Mexico and neighboring states. Motion for Judgment ¶ 2, at 1 (setting forth this fact). See Motion for Judgment Response at 1-6 (not disputing this fact). Med Flight "performs emergency air transports under the authority granted by the Federal Aviation Administration ('FAA') to operate as a Part 135 air carrier" and thus constitutes an "air carrier" as the term is defined in the "Airline Deregulation Act of 1978 . . . ." Motion for Judgment ¶ 3, at 1-2 (setting forth this fact). See Motion for Judgment Response at 2 (not disputing this fact). Med Flight "was registered with the [DOT] to operate as a Part 298 air taxi operator, providing on-demand air ambulance services." Motion for Judgment ¶ 3, at 1-2 (setting forth this fact). See Motion for Judgment Response at 2 (not disputing this fact).[2]

On or about October 5, 2015, Woods, a Murphy Builders employee, received emergency medical treatment for a work-related injury at Rehoboth Health. See Motion for Judgment ¶ 4, at 2 (setting forth this fact); Motion for Judgment Response at 1-6 (not disputing this fact). Builders Trust provides "workers' compensation insurance" to Woods' employer, Murphy Builders. Motion for Judgment ¶ 5, at 2 (setting forth this fact). See Motion for Judgment Response at 1-6 (not disputing this fact). Physician Assistant Bodden at Rehoboth Health was

---

[2]The Motion for Judgment Response does not dispute this fact, specifically, but argues that the Complaint did not originally allege the fact. See Motion for Judgment Response at 2. The Court recognizes that the Motion for Judgment Response's dispute is in the context of a motion for judgment on the pleadings, and not summary judgment, but concludes that Builders Trust has suggested that the Court should convert the Motion for Judgment to a motion for summary judgment and that the Motion for Judgment Response has not otherwise disputed this material fact. The Court, accordingly, deems the fact undisputed.

unable to treat Woods' medical condition and thus arranged for his transfer; Dr. Kelly authorized

the transfer to UNMH.  See Motion for Judgment ¶ 6, at 2 (setting forth this fact); Motion for

Judgment Response at 1-6 (not disputing this fact).  "Based on the distance between the medical

facilities, the unavailability of ground transportation and Mr. Woods' medical condition, a

medical transport fixed wing aircraft from [Med Flight] was dispatched by . . . Bodden . . . ,

[and] approved by Dr. Kelly."  Motion for Judgment ¶ 7, at 2 (setting forth this fact).  See

Motion for Judgment Response at 1-6 (not disputing this fact).  Med Flight's transport of Woods

from Rehoboth Health to UNMH proceeded safely and in accordance with EMTALA and other

controlling federal law.  See Motion for Judgment ¶ 8, at 2 (setting forth this fact); Motion for

Judgment Response at 1-6 (not disputing this fact).[3]  "Congress enacted EMTALA as a way to

combat 'patient dumping.'"  Motion for Judgment ¶ 9, at 2-3 (setting forth this fact).  See Motion

for Judgment Response at 1-6 (not disputing this fact).[4]  "[U]nder [EMTALA], if an individual

---

[3]The Motion for Judgment Response disputes that the Complaint alleges this information, but does not otherwise dispute this fact.  See Motion for Judgment Response at 3.  For the reasons provided supra n.2, the Court thus deems the fact undisputed.

[4]This assertion of material fact in the Motion for Judgment incorporates a statement of law that Med Flight considers applicable to the resolution of this matter.  The Court recognizes that such an assertion is not, in the context of a summary judgment motion, consistent with a proffer of material fact.  See D.N.M.L.R. 56.1(b).  Normally, the facts asserted should be facts, not statements of law.  The Motion for Judgment Response does not specifically refute these assertions of law, however, but states "[m]any of these asserted facts contain characterizations of the law.  Although a court may consider any facts of which it can take judicial notice in ruling on a motion for judgment on the pleadings . . . a court can only take judicial notice of adjudicative facts, not legislative facts.  The Court thus cannot take judicial notice of Plaintiff's characterizations of law."  Motion for Judgment Response at 2.  The Court does not usually call stating the law as taking judicial notice, but the effect is essentially the same.  These statements of the law are undisputed, and when the Court does not usually state the law in the factual section, the Court concludes that, in this instance, the statements of undisputed law proffered by the Motion for Judgment are helpful to tell this story.  The Court will thus include the statements of the law that are proffered as fact by the Motion for Judgment, and left undisputed by the Motion for Judgment Response, in its factual section.

comes to the emergency department of a hospital and requests treatment, the hospital must examine the person to determine if an emergency medical condition exists . . . [and i]f there is a medical emergency the hospital must provide either the additional examination or treatment that is necessary to stabilize [the condition] or else transfer the patient to another medical facility," and "[o]nly those patients that have an unstabilized [condition] are transferred."  Motion for Judgment ¶ 10, at 3 (setting forth this fact).  See Motion for Judgment Response at 1-6 (not disputing this fact).[5]  Accordingly, a "hospital is also required to ensure the patient is 'stable' prior to the transfer," which is defined as meaning "within reasonable medical probability, no medical deterioration of the condition is likely to result from the transfer of the individual from a facility."  Motion for Judgment ¶ 11, at 3 (setting forth this fact)(citing CFS regulations at 42 C.F.R. 489.24(b)).  See Motion for Judgment Response at 1-6 (not disputing this fact).[6]

There were no reported violations of the EMTALA in connection with Woods' transfer. See Motion for Judgment ¶ 12, at 3 (setting forth this fact); Motion for Judgment at 1-6 (not disputing this fact).[7]  "EMTALA requires the receiving hospital to accept the transfer if they provide higher care.  The statute and the regulations provide that any participating which has 'specialized capabilities or facilities' . . . or which is a 'regional referral center' in a rural area,

---

[5]This assertion of material fact in the Motion for Judgment incorporates a statement of law that Med Flight considers applicable to the resolution of this matter.  See supra n.4.  The Court will include this statement of the law that is proffered as fact by the Motion for Judgment, and left undisputed by the Motion for Judgment Response, in its factual section.  See supra n.4.

[6]This assertion of material fact in the Motion for Judgment incorporates a statement of law that Med Flight considers applicable to the resolution of this matter.  See supra n.4.  The Court will include this statement of the law that is proffered as fact by the Motion for Judgment, and left undisputed by the Motion for Judgment Response, in its factual section.  See supra n.4.

[7]The Motion for Judgment also asserts that, where a transfer was not medically necessary, the CMS regulation guidelines require a receiving hospital "to report to CMS or the State survey agency" "the EMTALA violation within 72 hours when it suspects that it has received an improperly transferred individual."  Motion for Judgment ¶ 12, at 3.

may not refuse to accept a patient in transfer, if it has the capacity to treat the individual."

Motion for Judgment ¶ 13, at 3 (setting forth this fact).  See Motion for Judgment Response at 1-

6 (not disputing this fact).[8]  "The receiving hospital will be obligated to accept the transfer in

most cases, so long as it has the ability to treat the patient and its capabilities exceed those of the

referring hospital, even if only because of overcrowding or temporary unavailability of

personnel."  Motion for Judgment ¶ 13, at 4.  See Motion for Judgment Response at 1-6 (not

disputing this fact).[9]  "EMTALA also requires hospitals that accept payment under the Medicare

program to provide emergency health care treatment to anyone in need regardless of citizenship,

legal status, or ability to pay."  Motion for Judgment ¶ 14, at 4 (setting forth this fact)(quoting

the CMS regulations at 42 C.F.R. § 489.24(d)).  See Motion for Judgment Response at 1-6 (not

disputing this fact).[10]  Med Flight provides "emergency air transportation to anyone in need

regardless of citizenship, legal status, or ability to pay.  [Med Flight] does not generally inquire

about the individual's method of payment or insurance status at the time of transport."  Motion

for Judgment ¶ 15, at 4 (setting forth this fact).  See Motion for Judgment Response at 1-6 (not

disputing this fact).  Med Flight "is not self-dispatching and is generally called upon to provide

transports because medical facilities providing emergency care must comply with the EMTALA

---

[8]This assertion of material fact in the Motion for Judgment incorporates a statement of law that Med Flight considers applicable to the resolution of this matter.  See supra n.4.  The Court will include this statement of the law that is proffered as fact by the Motion for Judgment, and left undisputed by the Motion for Judgment Response, in its factual section.  See supra n.4.

[9]This assertion of material fact in the Motion for Judgment incorporates a statement of law that Med Flight considers applicable to the resolution of this matter.  See supra n.4.  The Court will include this statement of the law that is proffered as fact by the Motion for Judgment, and left undisputed by the Motion for Judgment Response, in its factual section.  See supra n.4.

[10]This assertion of material fact in the Motion for Judgment incorporates a statement of law that Med Flight considers applicable to the resolution of this matter.  See supra n.4.  The Court will include this statement of the law that is proffered as fact by the Motion for Judgment, and left undisputed by the Motion for Judgment Response, in its factual section.  See supra n.4.

and must follow certain of EMTALA's implementing regulations" promulgated by CMS. Motion for Judgment ¶ 16, at 4 (setting forth this fact).[11]  "CMS specifically mandates that it is the treating physician at the treating hospital who decides how the individual is transported to the recipient hospital and what transport service will be used . . . [t]he transferring hospital is required to arrange transport that minimizes the risk to the individual who is being transferred . . . ." Motion For Judgment ¶ 17, at 4-5.  See Motion for Judgment Response at 1-6 (not disputing this fact).[12]  "EMTALA places the responsibility on the transferring hospital to ensure that the Statute's requirements are met.  As to a transport from a transferring hospital, the Statute requires that the patient be accompanied by qualified personnel and transportation equipment." Motion for Judgment ¶ 18, at 5.  See Motion for Judgment Response at 1-6 (not disputing this fact).[13]

Med Flight "is called by a hospital to provide emergency transportation because it has 'qualified personnel and transportation equipment' to provide critical emergency air transportation for those in dire need of such transportation," and Med Flight is "generally selected and dispatched by a patient's treating physician . . . because, in addition to being an EMTALA qualified provider, the provider also has favorable estimated transport times."  Motion

---

[11]The Motion for Judgment Response disputes that the Complaint alleges this information, but does not otherwise dispute this fact.  See Motion for Judgment Response at 3.  For the reasons provided supra n.2, the Court thus deems the fact undisputed.

[12]This assertion of material fact in the Motion for Judgment incorporates a statement of law that Med Flight considers applicable to the resolution of this matter.  See supra n.4.  The Court will include this statement of the law that is proffered as fact by the Motion for Judgment, and left undisputed by the Motion for Judgment Response, in its factual section.  See supra n.4.

[13]This assertion of material fact in the Motion for Judgment incorporates a statement of law that Med Flight considers applicable to the resolution of this matter.  See supra n.4.  The Court will include this statement of the law that is proffered as fact by the Motion for Judgment, and left undisputed by the Motion for Judgment Response, in its factual section.  See supra n.4.

for Judgment ¶ 19, at 5 (setting forth this fact).  See Motion for Judgment Response at 1-6 (not disputing this fact).  Med Flight is an "air carrier" under the Airline Act and "sets a market rate for the transport that consists of a lift-off fee and a mileage fee, that combined represents [Med Flight]'s billed charges."  Motion for Judgment ¶ 20, at 5 (setting forth this fact).[14]  "[T]he [Airline Act] expressly states that it is in the public interest to place 'maximum reliance on competitive market forces and on actual and potential competition (A) to provide the needed air transportation system, and (B) to encourage efficient and well-managed carriers to earn adequate profits and attract capital.'"  Motion for Judgment ¶ 21, at 5-6 (setting forth this fact)(citing Airline Act § 3(a)).  See Motion for Judgment Response at 1-6 (not disputing this fact).[15]  "[T]o prevent interference with its objective, Congress included a preemption provision in the [Airline Act] that prohibits a State from enacting or enforcing any statute, regulation or other provision of law 'related to a price, route, or service of an air carrier.'"  Motion for Judgment ¶ 22, at 6 (setting forth this fact)(citing Airline Act § 4(a)).  See Motion for Judgment Response at 1-6 (not disputing this fact).[16]  The DOT "has taken the position that the [Airline Act]'s preemption

---

[14]The Motion for Judgment Response disputes that the Complaint alleges this information, but does not otherwise dispute this fact.  See Motion for Judgment Response at 3.  For the reasons provided supra n.2, the Court thus deems the fact undisputed.

[15]This assertion of material fact in the Motion for Judgment incorporates a statement of law that Med Flight considers applicable to the resolution of this matter.  See supra n.4.  The Court will include this statement of the law that is proffered as fact by the Motion for Judgment, and left undisputed by the Motion for Judgment Response, in its factual section.  See supra n.4.

[16]This assertion of material fact in the Motion for Judgment incorporates a statement of law that Med Flight considers applicable to the resolution of this matter.  See supra n.4.  The Court will include this statement of the law that is proffered as fact by the Motion for Judgment, and left undisputed by the Motion for Judgment Response, in its factual section.  See supra n.4.

provision applies to the field of air ambulance services."  Motion for Judgment ¶ 23, at 6.  See

Motion for Judgment Response at 1-6 (not disputing this fact).[17]

Woods signed a "Billing and Consent to Transport Form," wherein he agreed to pay Med

Flight, and "assign all right, title and interest in all [of his] benefit plans," before his transport to

UNMH.[18]  Upon completion of Woods' transport to UNMH from Rehoboth Health, Med Flight

billed Builders Trust.  See Motion for Judgment ¶ 24, at 6 (setting forth this fact); Motion for

---

[17]This assertion of material fact in the Motion for Judgment incorporates a statement of law that Med Flight considers applicable to the resolution of this matter.  See supra n.4.  The Court will include this statement of the law that is proffered as fact by the Motion for Judgment, and left undisputed by the Motion for Judgment Response, in its factual section.  See supra n.4.

[18]Billing and Consent to Transport (dated October 5, 2015), filed December 19, 2016 (Doc. 14-2)(depicting a signature by Michael Woods).  See Motion for Judgment Response at 15 n.4 (setting forth as fact this form's existence, and that by it Med Flight contends Woods assigned his rights in his workers' compensation insurance to Med Flight); Motion for Judgment Reply at 1-5 (not disputing this form's existence).  The Motion for Judgment Response, while setting forth the fact that Woods signed this form purporting to assign his interest in health benefits to Med Flight, asserts that Builders Trust nonetheless, in relevant part, disputes: (i) the existence of a contractual obligation -- or a breach of some contractual obligation -- on Builders Trust's behalf to pay for the medical services that Med Flight provided to Woods; (ii) the existence of damages on Med Flight's behalf; (iii) given its dispute at to the existence of any contractual obligations, the existence of a breach of the covenant of good faith and fair dealing; and (iv) that the defenses of unclean hands, laches, waiver, estoppel, ratification, and comparative bad faith, would not nonetheless apply in Builders Trust's favor in the construction of the alleged contractual obligations.  See Motion for Judgment Response at 5-6 (breaking off into a numbered list Disputed Facts one through six, with each proffer of disputed fact containing a long list of disputed items at issue in the lawsuit).  The Motion for Judgment Reply disputes that there is no contract or valid assignment, see Motion for Judgment Reply at 1-5.  Yet, as to this issue of a contract's existence and valid assignment by Woods, that is a legal issue, and not factual issue, for the Court to decide.  The existence of the Billing and Consent to Transport form is a material fact, that is undisputed by the parties, and it is for the Court to determine whether, against the backdrop of the undisputed material facts, the law requires judgment in the moving party's favor.  This requires an analysis of the terms of the Workers' Compensation and Employer's Liability Coverage Agreement, filed December 19, 2016 (Doc. 12-1)("Contract"), as well as the Billing and Consent to Transport form, for a determination as to the contractual privity of the parties.  Accordingly, despite Builders Trust's arguments as to the legal significance of the purported contractual relationship and assignment in this case, the Court concludes that the fact that Woods signed a Billing and Consent form before his transport is nonetheless an undisputed material fact.

Judgment Response at 1-6 (not disputing this fact).[19]   Builders Trust "paid $10,477.36" to Med

Flight in response to the billed charges.   Motion for Judgment ¶ 25, at 6 (setting forth this fact).

See Motion for Judgment Response at 4 (not disputing this fact).[20]

---

[19]The Motion for Judgment also asserts that Med Flight billed Builders Trust "the amount that [Med Flight] normally charges . . . in the amount of $58,834.29."  Motion for Judgment ¶ 24, at 6.  The Motion for Judgment Response disputes that the Complaint alleges that such charge was the normal amount, see Motion for Judgment Response at 3, and that it factually constitutes the "amount it normally charges," Motion for Judgment Response at 4.  The Motion for Judgment Response further disputes that the Med Flight is "entitled to recover any more money than [$10,477.36]" or that Med Flight is "entitled to recover the remainder of the billed charges" that Builders Trust has not already paid.   Motion for Judgment Response at 4 (referencing, assumptively, the Letter from Sentinel Air Medical Alliance Partner Jeff Frazier to Michael Hamsing (dated May 14, 2016), filed December 19, 2016 (Doc. 14-4)("Frazier Aff.")(discussing Med Flight's transport of Woods and explaining that his opinion was that a reasonable level of reimbursement for Med Flight's transport of Woods would have been "$12,800.  This represents 216 percent of the Medicare reimbursement rate and provides Gallup Med Flight with a 100 percent gross margin.")).  The Motion for Judgment Reply maintains that it billed its normal amount, and that the amount proffered by Builders Trust was insufficient. See Motion for Judgment Reply at 6-7 (citing Affidavit of Chris Webb (dated January 4, 2017), filed January 5, 2017 (Doc. 16-1)("Webb Aff.")(explaining that Webb is the Vice President of Med Flight, and that this bill constituted the normal amount Med Flight charges for these transports)).  Builders Trust has thus disputed the amount quoted in the Webb Aff. by citing to evidence that calls into doubt the reasonableness, and by proxy, the notion that the billed amount is the normal amount Med Flight charges, of this transport.  Med Flight has not presented the Court with detailed receipts of similar transactions, and instead has only submitted an affidavit from its vice president affirming that this is the normal amount.  The Court, accordingly, deems the normal amount which Med Flight bills, and the consequent amount that Builders Trust owes to Med Flight, disputed.

[20]The Motion for Judgment, however, also asserts that Med Flight billed Builders Trust the "normal" amount that Med Flight charges.  Motion for Judgment ¶ 25, at 6. The Motion for Judgment Response disputes that Builders Trust was billed "the amount that [Med Flight] normally charges," or that it owes any more money to Med Flight.  Motion for Judgment Response at 4.  The Court, accordingly, deems that fact disputed, see supra n.19.

The Motion for Judgment Response further asserts, or reasserts, as "disputed fact," (i) the amount that Med Flight is entitled to from Builders Trust, and the (ii) the value of Med Flight's claim and the amount Med Flight claims.  See Motion for Judgment Response at 5-6 (breaking off into a numbered list Disputed Facts one through six, with each proffer of disputed fact containing a long list of disputed items at issue in the lawsuit).  The Court has already concluded that whether the amount Med Flight billed Builders Trust constituted the normal amount Med Flight charges is a disputed fact.  See supra n.19.

## PROCEDURAL HISTORY

The Court next sets forth the procedural history of this case.  The Court includes the procedural history of this case in state court, as well as in federal court.  The procedural history is as follows.

1.    **The Complaint.**

Med Flight filed the Complaint in state court, in the Eleventh Judicial District Court, County of McKinley, State of New Mexico.  Complaint ¶¶ 1-24, at 1-5.  The Complaint makes three counts of allegations against Builders Trust.  See Complaint ¶¶ 19-34, at 3-5.  Count I, for "Collection of Debt and Money Due," alleges that Woods suffered a work-related injury necessitating Med Flight's transport to UNMH, resulting in Med Flight's submission of a bill to Murphy Builders for "$58,834.29."  Complaint ¶¶ 19-20, at 3-4.  The Complaint explains that, upon receipt, Murphy Builders submitted Med Flight's bill to Builders Trust, "its workers' compensation insurer," but that, in contravention of New Mexico law, Builders Trust paid Med Flight only "$10,477.36," and refuses to pay the remainder of charges.  Complaint ¶¶ 21-24, at 4.

In the Complaint's Counts II and III, for "Breach of Contract" and "Breach of Covenant of Good Faith," the Complaint alleges that Woods signed a "Billing and Consent to Transport" form assigning Med Flight "all right, title and interest in all benefit plans from which his dependents or he were entitled to recover for the services provided by" Med Flight.  Complaint ¶ 26, at 4.  Accordingly, the Complaint provides that Builders Trust "was contractually obligated to pay for the medical services provided to its insured Michael Woods" and that, further, "Woods was entitled to recover from Defendant payment for the services."  Complaint ¶¶ 27-28, at 4.  Thus, the Complaint states that Builders Trust "has breached its contract to pay for the services

provided by" Med Flight and that Med Flight has incurred "$48,356.93" in damages.  Complaint ¶¶ 29-30, at 4.

The Complaint thereafter alleges that all contracts in New Mexico include an "implied covenant of good faith and fair dealing," and that Builders Trust, in bad faith, has disregarded Med Flight's right to payment for the services it provided Woods by paying only a partial amount of the bill and refusing to pay the rest of the balance.  Complaint ¶¶ 31-33, at 4-5.  The Complaint then realleges that, as a result of the breach, Med Flight has incurred damages in the amount of "$48,356.93."  Complaint ¶ 34, at 5.  In sum, the Complaint requests "[c]ompensatory damages in the amount of $48,356.93," "[p]rejudgment interest on this amount from October 5, 2015, through the date of judgment," and "[a]ny other interest, damages, or relief available at law or equity."  Complaint ¶¶ A-C, at 5.

### 2.    The Notice of Removal.

Builders Trust removed the case to federal court with its Notice of Removal, filed November 10, 2016 (Doc. 1)("Notice of Removal").  The Notice of Removal explains that Med Flight originally brought this matter before the New Mexico Workers' Compensation Administration, "requesting a determination of contested billing dispute."  Notice of Removal ¶ 1, at 1.  At the Workers' Compensation Administration hearing, however, the Notice of Removal states that Med Flight argued that the Workers' Compensation Administration did not have jurisdiction over that billing dispute, because the Airline Act "preempts any State regulation or review of its rates," resulting in the Workers' Compensation Administration's dismissal of the matter with prejudice.  Notice of Removal ¶ 1, at 1.  Then, according to the Notice of Removal, Med Flight filed its Complaint in state court.  See Notice of Removal ¶ 2, at 2.  The Notice of Removal asserts, regarding subject-matter jurisdiction in federal court, that, "[a]lthough Plaintiff

dresses its claims for relief in the garb of state law, courts regularly look past the nominal causes

of action to the litigation realities when deciding whether federal question jurisdiction exists"

and that the Supreme Court of the United States of America has emphasized the "commonsense

notion that a federal court ought to be able to hear claims recognized under state law that

nonetheless turn on substantial questions of federal law."  Notice of Removal ¶¶ 9-10, at 3.

Importantly, the Notice of Removal identifies that, "even though state law creates . . . causes of

action, a case might still arises under the laws of the United States if . . . right to relief under state

law requires resolution of a substantial question of federal law."  Notice of Removal ¶ 10, at 4

(internal quotation marks omitted).  In this case, the Notice of Removal alleges:

> Plaintiff's Complaint alleges that Plaintiff was improperly reimbursed for its air
> ambulance services and that the [Airline Act] preempts any State statute,
> regulation, or law that allows for any reimbursement other than the total billed
> amount. . . .  Instead of looking at the New Mexico Workers' Compensation Act
> as its exclusive remedy, Plaintiff's request for relief rests entirely on the Court's
> interpretation of the [Airline Act]'s preemption provision.  A federal question is
> thus necessarily raised in the Complaint.

Notice of Removal ¶ 11, at 4.

The Notice of Removal further explains that, with the Airline Act Congress "deregulated

the commercial airline industry so that airlines would compete with one another based on price,

routes, and service," and that air ambulance patients differ "from typical airline passengers

because they often have no choice between ambulance providers."  Notice of Removal ¶ 12, at 4.

States, as the Notice of Removal provides, "have regulated the rates that air ambulance providers

charge through statutes, regulations, and workers' compensation authorities," and "air ambulance

providers have increasingly begun to file suits asserting that state agencies lack the authority to

regulate or reduce air ambulance fees."  Notice of Removal ¶¶ 13-14, at 5.  Thus, according to

the Notice of Removal, the Complaint "alleges that workers' compensation providers must pay

the rates charged by the ambulance provider -- without any limitation or review imposed by the" Workers' Compensation Administration.  Notice of Removal ¶ 14, at 5.

The Notice of Removal therefore alleges that it disputes "that Congress actually intended the [Airline Act] to preempt state workers' compensation laws and regulations," and that federal cases are on appeal "before the Tenth and Fifth Circuits" regarding this matter.  Notice of Removal ¶ 15, at 5.  The Notice of Removal further explains that the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), "precludes federal statutes from preempting state regulation of insurance unless the federal statute specifically relates to the business of insurance" and that "the [Airline Act] does not specifically relate to the business of insurance."  Notice of Removal ¶ 16, at 5. The Notice of Removal asserts that, because the "Plaintiff's claims are primarily based on its allegation that the [Airline Act] preempts state regulation" of workers' compensation insurance in the air ambulance context, grounds for removal based on federal-question jurisdiction exist. Notice of Removal ¶ 17, at 5-6.

### 3.    The Answer.

Builders Trust, after filing the Notice of Removal, answered the Complaint with Builders Trust of New Mexico's Answer to Plaintiff's Complaint for Debt and Money Due and Breach of Contract, filed November 17, 2016 (Doc. 3)("Answer").  The Answer, in relevant part, "admits that Plaintiff charged $58,834.29 for the transport," "that it paid Plaintiff $10,477.36," but "specifically denies that Plaintiff is entitled to any more money than what was paid."  Answer ¶¶ 20, 23, 24, at 4.  The Answer further denies the existence of any contractual obligation by Builders Trust to Med Flight.  See Answer ¶¶ 26-35, at 4-5.  Importantly, the Answer raises a number of defenses to the Complaint, including "fail[ure] to state a claim" and a potential time bar.  Answer at 5-6.  The Answer also asserts as a defense that Builders Trust "acted prudently,

in good faith, and each of its actions relative to the Plaintiff and the allegations in Plaintiff's Complaint were justified," and that "[t]here was an honest dispute regarding the value of Plaintiff's claim and [Builders Trust] is entitled to contest the amount claimed by Plaintiff." Answer at 6.  Further, the Answer asserts as a defense that "[t]he Airline Deregulation Act does not entitle Plaintiff to obtain the remedies sought in this case, and does not preempt the New Mexico Workers' Compensation Act or the New Mexico workers' compensation proceedings," and that "[t]he McCarran-Ferguson Act, 15 U.S.C. § 1012(b), precludes federal statutes from preempting state regulation of insurance, unless the federal statute specifically relates to the business of insurance.  Accordingly, the Airline Deregulation Act cannot govern reimbursements due to Plaintiff under the insurance policy at issue in this case."  Answer at 6.  Last, the Answer contends that the dispute is not ripe, and that the Contract policy's terms, "unclean hands, laches, waiver, estoppel and/or ratification," and "comparative bad faith or comparative fault or failure to timely comply with policy preconditions to suit" all bar Med Flight's claims.  Answer at 6-7. The Answer also asserts that Med Flight is barred, or limited, to the extent Builders Trust has relied on any of its "acts, omissions, material misrepresentations or material representations" to its detriment.  Answer at 7.

### 4. **The MTD**.

Builders Trust filed its MTD on November 17, 2016, asserting that "Counts II and II," alleging breach of contract, and breach of the covenant of good faith and fair dealing, fail to "set forth claims upon which relief can be granted," because there is no contract between Builders Trust and Med Flight.  MTD at 1.  In addition, the MTD asserts that there is no contractual privity between Med Flight and Builders Trust, and that thus Med Flight lacks standing to pursue its claims.  See MTD at 1.  Accordingly, the MTD requests that the Court dismiss "Counts II and

III with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)."  MTD at 1.

After restating the Complaint's factual allegations, and the legal standards appurtenant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedures, Builders Trust first argues in the MTD that Med Flight "has entirely failed to set forth a plausible claim for either breach of contract," because, "[a]lthough Plaintiff alleges that Mr. Woods assigned to Plaintiff his interest in all benefit plans from which he was entitled to recover for the services provided by Plaintiff, Plaintiff has failed to establish Mr. Woods' entitlement to recover from [Builders Trust]."  MTD at 5.  Builders Trust asserts that, specifically, Med Flight "has failed to allege the existence of any contract between Mr. Woods and [Builders Trust].  As the workers' compensation insurer for Murphy Builders -- the company for which Mr. Woods was working -- any insurance contract would be between [Builders Trust] and Murphy Builders."  MTD at 5.  Thus, Builders Trust argues that, "[g]iven the absence of any contract between Plaintiff and [Builders Trust], Plaintiff cannot sustain a claim for breach of contract against [Builders Trust]."  MTD at 5 (citing Healthsource, Inc. v. X-ray Assocs. of N.M., 2005-NMCA-097, ¶¶ 19-21, 116 P.3d 861).  Builders Trust then argues that Med Flight nonetheless lacks standing to pursue its breach-of-contract claim, because "there is no contract and, thus, no contractual privity between" Med Flight and Builders Trust.  MTD at 5.

Next, the MTD addresses Med Flight's claim for breach of the covenant of good faith and fair dealing, and argues that, "[i]n New Mexico, the existence of a covenant of good faith and fair dealing requires an underlying contract."  MTD at 6.  Thus, Builders Trust asserts that, because there is no contract between it and Med Flight, the covenant cannot apply, and, further, because no contract exists, no contractual privity to support standing exists between it and Med

Flight.  See MTD at 6.  Builders Trust thus requests that the Court dismiss the Complaint's

Count II and II.  See MTD at 6 (citing Fed. R. Civ. P. 12(b)(1), (b)(6)).

    **5.**     **The MTD Response.**

       Med Flight responded to the MTD with Plaintiff Gallup Med Flight, LLC's Response to

Defendant Builders Trust of New Mexico's Partial Motion to Dismiss, filed December 5, 2016

(Doc. 8)("MTD Response").  Med Flight asserts that Woods is a third-party beneficiary to the

workers' compensation insurance contract between Builders Trust and Woods' employer

Murphy Builders, and that Woods assigned any claims he had as a third-party beneficiary

regarding his air ambulance transport to Med Flight.  See MTD Response at 1.  This assignment,

Med Flight argues, establishes contractual privity between it and Builders Trust, supporting its

claims for breach of contract, and breach of the covenant of good faith and fair dealing.  See

MTD Response at 1.

       In support of Med Flight's claims, the MTD Response first argues that a third-party

beneficiary of a contract can have enforceable rights against another party to the contract, and

that Woods was a third-party beneficiary, with enforceable rights, to the workers' compensation

insurance contract between Murphy Builders -- who was required "by statute to provide workers'

compensation for its employees" -- and Builders Trust.  MTD Response at 3-4.  Med Flight

further argues that the insurance agreement between Murphy Builders and Builders Trust was

"intended to benefit Murphy Builders [sic] employees, such as Michael Woods, who are injured

while performing work for Murphy Builders."  MTD Response at 4.  Thus, Med Flight asserts

that "[t]here can be no dispute that Mr. Woods was a third party beneficiary for any workers'

compensation insurance contract between [Builders Trust] and Murphy Builders," and that

therefore Woods is entitled to enforce all of the his rights under the insurance contract between

Builders Trust and Murphy Builders.  MTD Response at 4.  In this case, then, the MTD Response concludes that Woods, as a valid third-party beneficiary, assigned his rights to Med Flight regarding his air ambulance transport to UNMH, authorizing Med Flight's suit against Builders Trust in the present action.  See MTD Response at 4.

Med Flight then argues that, because Woods is a third-party beneficiary to the workers' compensation insurance contract between Murphy Builders and Builders Trust, and that he assigned his rights under that contract, in relevant part, to Med Flight, Med Flight's "allegations adequately plead claims for breach of contract and breach of the covenant of good faith and fair dealing" where Builders Trust has not fulfilled the cost of the air ambulance's services.  MTD Response at 4.  Here, according to the MTD Response, Med Flight has "pleaded in its Complaint that [Builders Trust] breached its contract in refusing to pay the billed charges under workers' compensation associated with the treatment provided by" Med Flight to Woods.  MTD Response at 5.  The MTD Response also argues that Med Flight has "further pleaded that by refusing to pay billed charges arising out of the treatment . . . [Builders Trust] breached the covenant of good faith and fair dealing which is present in every contract in New Mexico."  MTD Response at 5.  Med Flight then reiterates that the Court should draw all reasonable inferences from the Complaint in its favor and that the Court should therefore deny the MTD.  See MTD Response at 5-6.

### 6.     **The MTD Reply.**

Builders Trust replied in support of its MTD with Defendant Builders Trust of New Mexico's Reply in Support of Its Partial Motion to Dismiss, filed December 19, 2016 (Doc. 12)("MTD Reply").  The MTD Reply argues, first, that the "Plaintiff has entirely failed to set forth any legal authority supporting its assertion that a third party beneficiary can assign his

rights to workers' compensation benefits to his healthcare providers."   MTD Reply at 1.

Although "no New Mexico court has addressed this issue," the MTD Reply cites to the

Restatement (Second) of Contracts § 317(2)(A) (1979), for the proposition that

> Mr. Woods could not assign his workers' compensation benefits to Plaintiff
> because any such assignment would have materially changed [Builders Trust's]
> duty and increase the risk imposed on [Builders Trust] by the contract.  Moreover,
> any such assignment would be contrary to New Mexico's public policy.
> Accordingly, Plaintiff has not, and cannot, set forth the existence of a contract
> between Plaintiff and [Builders Trust].

MTD Reply at 1.  Builders Trust thus contends that the lack of support for Med Flight's "claim

that there is contractual privity between itself and [Builders Trust] because Mr. Woods assigned

to [Med Flight] his interest as a third-party beneficiary of the workers' compensation insurance

contract between [Builders Trust] and Murphy Builders," is grounds for dismissing the

Complaint's Counts II and III regarding breach of contract.  MTD Reply at 2.

Builders Trust argues that "the only case regarding assignment to which Plaintiff cites is

*Seaboard Fire & Marine Ins. Co. v. Kurth*, 1980-NMCA-112, 96 N.M. 631, 633 P.2d 1229,"

which considered "whether a claimant under the New Mexico Workers' Compensation Act could

assign his claim against a third-party tortfeasor such that he was not an indispensable party to the

action brought against the tortfeasor."   MTD Reply at 2 (alterations omitted).   According to

Builders Trust, a man named Higgins was injured in a car accident with a defendant named

Kurth, and, after the accident, Seaboard paid Higgens an amount "under the workers'

compensation policy" and then retained a subrogation[21] receipt from Higgens.  MTD Reply at 2-

3.  According to Builders Trust, a few years after the accident and that transaction, Seaboard and

---

[21]Subrogation is defined as "the principle under which an insurer that has paid a loss
under an insurance policy is entitled to all the rights and remedies belonging to the insured
against a third party with respect to any loss covered by the policy." Subrogation, Black's Law
Dictionary (7th ed. 2000).

Higgens sued Kurth asserting a claim "based on the payment of benefits to Mr. Higgens under the New Mexico Workers' Compensation Act."  MTD Reply at 3.  The MTD Reply explains that the state court first dismissed Higgens from the suit, and then Seaboard, because Higgens was an essential party.  See MTD Reply at 3.  Builders Trust provides that, on appeal, Seaboard argued that Higgens had assigned his right to actions to Seaboard with the subrogation receipt, and the Court of Appeals of New Mexico partially agreed, holding that the subrogation receipt -- although not investing Seaboard a right of subrogation -- provided Seaboard a right to reimbursement, and thus Higgens was a dispensable party.  See MTD Reply at 3.  Builders Trust thus explains that "the New Mexico Court of Appeals has stated that *Seaboard Fire & Marine Ins. Co.* simply stands for the proposition that the New Mexico Workers' Compensation Act creates no right of subrogation or assignment in the insurer, merely a right of reimbursement."  MTD Reply at 3-4 (internal quotation marks and alteration omitted).

Accordingly, Builders Trust argues that the present case is dissimilar; here, the Court is not considering an "insurer's right of reimbursement from a third party for the benefits that were issued to a worker.  Instead, this case involves an alleged assignment to a healthcare provider of the workers' right to benefits under the workers' compensation contract between his employer and his employer's insurer."  MTD Reply at 4.  Builders Trust then cites the Restatement (Second) of Contracts, which provides: "A contractual right can be assigned unless . . . the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor . . . or materially increase the burden of risk imposed on him by his contract."  MTD Reply at 4-5.  In this case, Builders Trust explains that Woods could not assign his benefits, because that assignment materially changes its duties and increases its risk in the contract.  See MTD Reply at 5.  That result is the case, according to Builders Trust, because the

assignment does not "merely change the person to whom payment was to be made.  Instead, it would subject [Builders Trust] to the risk of having to make a higher payment . . . [because the] contract with Murphy Builders requires it only to pay for reasonable and necessary health care services from a healthcare provider."  MTD Reply at 5.  Builders Trust relies on the language in the Contract, stating: "We will pay promptly when due the benefits required of you by New Mexico workers [sic] compensation law."  MTD Reply at 5 (alterations omitted).  Because the third-party beneficiary, Woods, could assign his rights to benefits to a healthcare provider, such assignment entails an increased risk that Builders Trust will be liable to pay any charges, no matter how exorbitant.  See MTD Reply at 5.

Builders Trust also contends in the MTD Reply that such an assignment "would be contrary to New Mexico's public policy," because the New Mexico Workers' Compensation Act is intended "to protect injured workers from becoming dependent on public welfare and to provide them with some financial security."  MTD Reply at 6.  According to Builders Trust, "[a]n employee's assignment of their workers' compensation benefits to a healthcare provider would not prevent the employee from becoming dependent on public welfare or provide the employee with financial security."  MTD Reply at 6.  Further, allowing assignment, Builders Trust contends, creates "unprecedented litigation," because litigants can bypass bringing disputes before the Workers' Compensation Administration.  MTD Reply at 6.  The MTD Reply thus concludes by requesting that the Court grant the MTD.  MTD Reply at 7-8.

### 7.   **Motion for Judgment.**

Med Flight filed its Motion for Judgment on January 5, 2017.  See Motion for Judgment at 1.  The Motion for Judgment argues that Med Flight is "entitled to the relief sought in its Complaint as a matter of law as there are no material facts which dispute the relief sought by

[Med Flight]." Motion for Judgment at 1. After setting out what the Motion for Judgment calls the "Material Facts," Med Flight argues that CMS regulations mandate that "the treating physician at the transferring hospital [] decides how the individual is transported to the recipient hospital." Motion for Judgment at 6-7. Further, according to Med Flight, under EMTALA, the responsibility is "on the transferring hospital to ensure the Statute's requirements are met." Motion for Judgment at 7. According to Med Flight, regulations interpreting EMTALA require "hospitals accept payment under the Medicare program to provide emergency health care treatment to anyone in need . . . ." Motion for Judgment at 7.

The Motion for Judgment next provides the scenarios where "federal law may supersede, or preempt, state law," and explains that the Airline Act "includes a preemption clause that prohibits States from enacting or enforcing laws that have a connection with, or reference to, an air carrier's prices, routes or services," and that the preemption clause has broad overarching application. Motion for Judgment at 7-9 (internal quotation marks omitted). The Motion for Judgment also indicates that the Supreme Court has "held that a state 'may not seek to impose their own public policies or theories of competition or regulation on the operations of an air carrier,' whether by statute or common law or equitable contract doctrines." Motion for Judgment at 11 (citing American Airlines, Inc. v. Wolens, 513 U.S. 219, 225-28 (1995)). As Med Flight argues, "air ambulance operators certified by the FAA are air carriers entitled to the protections afforded by the [Airline Act]," which means that "[o]nce the [DOT] Secretary certificates an air ambulance operator, the competitive marketplace, rather than state regulations, controls the operator's prices, routes, and services, and only the secretary may revoke an air ambulance operator's certificate." Motion for Judgment at 13.

Med Flight then provides the legal standard for a motion for judgment on the pleadings: "Judgment on the pleadings may be granted if the moving party clearly establishes that no material fact remains to be resolved, and that the party is entitled to judgment as a matter of law. . . . The Court may examine the pleadings and any facts which the Court can take judicial notice."  Motion for Judgment at 13.  Here, Med Flight asserts in its Motion for Judgment that "New Mexico Workers' Compensation Statute and Rules are not pre-empted by the [Airline Act]," and, thus, because "the [Airline Act] does not pre-empt the New Mexico Workers' Compensation Act, the reverse-preemption doctrine of the McCarren Ferguson Act is not ripe for adjudication in this case, but the defenses raised by the Defendant in its Answer are pre-empted by the [Airline Act]."  Motion for Judgment at 14.

Regarding Airline Act preemption of the New Mexico Workers' Compensation Act, Med Flight explains that

> the NM Act is not written in a manner that relates to air ambulance rates or services nor does the fee schedule include in its over 9,100 services a provision for payment to air carriers.  It appears that New Mexico has simply chosen to avoid the issues of the [Airline Act] by not setting a fee schedule for an air carrier.

Motion for Judgment at 14.  Thus, Med Flight contends, because "air carrier rates seem to be intentionally omitted . . . the [New Mexico Workers' Compensation Act] provides for such a situation, providing that a 'health care provider shall be paid his usual and customary fee for services rendered or the maximum charge established pursuant to Subsection A of this section, whichever is less.'"  Motion for Judgment at 15 (citing New Mexico Workers' Compensation Act § 52-4-5(B)).  According to Med Flight, the New Mexico Administrative Code defines "usual and customary fee" as "the monetary fee that a practitioner normally charges for any given health care service," which is the fee that it charged Builders Trust and that Builders Trust has refused to pay.  Motion for Judgment at 15 (citing N.M. Admin. C. 11.4.7.8(C)(2)).  Thus,

Med Flight argues, Builders Trust's statement that the "Plaintiff seeks to compel [Builders Trust] to pay increased air ambulance fees/rates and bad faith damages, alleging that the [Airline Act] preempts establishment of State regulation and review of its rates, including review by the New Mexico Workers' Compensation Administration," is false.  Motion for Judgment at 15.  Med Flight explains that, although the Airline Act preempts New Mexico's regulation of air carrier rates, the New Mexico Workers' Compensation Act has "not attempted to establish air ambulance rates thus there is nothing to be pre-empted."  Motion for Judgment at 15.  Med Flight argues that, in light of the New Mexico Workers' Compensation Act, it is only asking it be paid its "usual and customary" fees, which it billed in the case of Woods' transport to UNMH.  Motion for Judgment at 15.  According to Med Flight, because there is nothing left for further determination "as the statutory language is unambiguous," it is owed its usual and customary amount, which it argues it charged in this case.  Motion for Judgment at 16.

Med Flight then argues, however, that the Airline Act preempts Builders Trust's affirmative defenses, even though "the [Airline Act] permits state-law-based court adjudication of routine breach of contract claims."  Motion for Judgment at 16.  Med Flight argues that such preemption of Builders Trust's defenses exists, because, "[a]lthough the [Airline Act] has not preempted [Med Flight]'s state law breach of contract claim against Builders Trust, there are instances where certain claims asserted against an air carrier . . . are preempted."  Motion for Judgment at 17.  Those instances include, Med Flight argues, Builders Trust's asserted defenses of "unclean hands, laches, waiver, estoppel, and/or ratification," and of "comparative bad faith or comparative fault or failure to timely comply with policy preconditions to suit."  Motion for Judgment at 18.  Thus, the Motion for Judgment concludes by stating: "Because the parties agree that the [Airline Act] does not preempt the New Mexico Workers' Compensation Act, the

reverse preemption doctrine of the McCarren Ferguson Act is not applicable and the issue raised

by [Builders Trust] in its Affirmative Defenses is not ripe for adjudication in this case."  Motion

for Judgment at 18.

### 8.    Motion for Judgment Response.

The Motion for Judgment Response begins by arguing that

> judgment on the pleadings is entirely inappropriate in this case because the pleadings reveal numerous disputes regarding the material facts.  Additionally, [Med Flight] is not entitled to judgment on the pleadings because it cannot demonstrate, as a matter of law, that there was contractual privity . . . or that [Builders Trust] breached the underlying contract.

Motion for Judgment Response at 1.  Further, Builders Trust, in its Motion for Judgment

Response, argues that Med Flight "misconstrues the applicable law in contending that [Builders

Trust]'s defenses are preempted."  Motion for Judgment Response at 1.  Builders Trust then

argues that Med Flight's

> statement of material facts is replete with new, unsubstantiated assertions.  The Court should disregard this extraneous information.  If the Court considers this extraneous information, it should convert Plaintiff's Motion into a motion for summary judgment.  Even if the Court were to convert . . . [Med Flight] has entirely failed to support its assertions with citations to the record [and] the Court should not consider [the] unsubstantiated assertions.

Motion for Judgment Response at 2 n.1.  In the same vein, Builders Trust also argues that

"[m]any of these asserted facts contain characterizations of law [and a]lthough a court may

consider any facts of which it can take judicial notice in ruling on a motion for judgment on the

pleadings . . . a court can only take judicial notice of adjudicative facts, not legislative facts."

Motion for Judgment Response at 2.  Builders Trust thus requests that, in its conversion of the

Motion for Judgment to a summary judgment motion, the Court not take judicial notice of

legislative facts alleged as material facts.  See Motion for Judgment Response at 2.

The Motion for Judgment Response then disputes the material facts -- in the context of a motion for judgment on the pleadings -- by first noting which proffered material facts contain information beyond those that the pleadings provide, and then proffering its own "disputed" material facts.  Motion for Judgment Response at 2-6.  According to Builders Trust, the disputes, essentially, are whether contractual privity, by Woods' assignment of his contractual rights to Med Flight, exists between Med Flight and Builders Trust, and whether the amount Med Flight billed Builders Trust constitutes Med Flight's normal charge for services.  See Motion for Judgment Response at 5-6.  Builders Trust then explains the framework of EMTALA regarding the transfer of patients from hospital to hospital.  See Motion for Judgment Response at 6-7.  Next, the Builders Trust discusses preemption and how Congress "enacted the [Airline Act] after determining that maximum reliance on competitive market forces would best further efficiency, innovation, and low prices as well as variety and quality of air transportation services," and thereby included a broad preemption clause in the Airline Act.  Motion for Judgment Response at 7-8 (internal quotation marks omitted).  Builders Trust argues that the preemption clause's scope is broad, reaching state enforcement actions that have "a connection with or reference to airline rates, routes, or services," and that "the central purpose of the" Airline Act is to eliminate "federal regulation of rates, routes, and services" so that the market can govern these categories.  Motion for Judgment Response at 8-10.  Thus, according to Builders Trust, the preemption clause's purpose is to ensure that states do not fill the void that the Airline Act's deregulation creates.  See Motion for Judgment Response at 10.  Common law contract claims under the Airline Act are, the Motion for Judgment Response argues, thus an integral component of the market forces that the Airline Act sought to embolden.  See Motion for Judgment Response at 10.

The Motion for Judgment Response then turns to Builders Trust's argument against judgment on the pleadings, first framing Med Flight's argument in the Motion for Judgment as being "that the Court should enter judgment on the pleadings because the [Airline Act] does not preempt the New Mexico Workers' Compensation Act and because the New Mexico Workers' Compensation Act provides that Plaintiff is entitled to be paid its usual and customary fee for [] services that it provided."  Motion for Judgment Response at 13.  The Motion for Judgment Response then concedes that Builders Trust "agrees that the [Airline Act] does not preempt the New Mexico Workers' Compensation Act or review by the New Mexico Workers' Compensation Administration."  Motion for Judgment Response at 13.  Yet, Builders Trust also asserts that, although Med Flight states in the Motion for Judgment that it declined to submit to the Workers' Compensation Administration's jurisdiction for reasons other than preemption, "the Order of Dismissal . . . shows otherwise," and indicates that Med Flight cited federal law as its reason for refusing to submit to the Workers' Compensation Administration's jurisdiction. Motion for Judgment Response at 13 n.3 (citing Order of Dismissal (dated July 13, 2016), filed December 19, 2016 (Doc. 14-1)).  Nonetheless, Builders Trust then argues that Med Flight has not, in the pleadings, set forth that the amount it charged Builders Trust was the "usual and customary fee."  Motion for Judgment Response at 13.  Indeed, Builders Trust contends, whether the amount Med Flight charged is the usual and customary fee is the subject of an "honest dispute."  Motion for Judgment Response at 13.  Builders Trust then disputes the existence of a contractual obligation or a breach of a contract on its part.  See Motion for Judgment Response at 14.  Builders Trust contends that the "Plaintiff has entirely failed to set forth any legal authority supporting its assertion that a third party beneficiary can assign his rights to workers' compensation benefits to a healthcare provider.  Any such assignment is contrary to the law, as

set forth in the Restatement (Second) of Contracts."  Motion for Judgment Response at 16. Further, in this case, Builders Trust asserts that an assignment by Woods to Med Flight would have "materially changed" its duty under its contract and "increased the risk imposed" on it by the contract.  Motion for Judgment Response at 16.  Builders Trust thus contends that it has "complied with its contract to pay reasonable health services" and that Woods' alleged assignment was not valid.  Motion for Judgment Response at 16-17.

Builders Trust next argues that, should the Court conclude that a contract exists through assignment, nonetheless, it fulfilled its obligation to pay "a reasonable, customary fee for air ambulance services" under its contract with Murphy Builders.  Motion for Judgment Response at 17.  Builders Trust argues that by paying what it "deemed to be the reasonable healthcare services" cost, its contractual obligations and covenant of fair dealing obligations were met. Motion for Judgment Response at 17-18.  Last, the Motion for Judgment Response addresses the contention that the Airline Act preempts Builders Trust's defenses.  See Motion for Judgment Response at 18.  Builders Trust argues that the Supreme Court, in American Airlines v. Wolens, did not discuss Airline Act preemption of equitable contract doctrines, and that here, regardless, the "equitable defenses relate only to Plaintiff's conduct" as opposed to "state-imposed obligations," meaning that Airline Act preemption does not apply.  Motion for Judgment Response at 20.

### 9.      Motion for Judgment Reply.

The Motion for Judgment Reply provides that "contractual privity exists as a result of valid assignment and the assignment did not expand any obligation of Defendant.  Further, Defendant inaccurately presented [argument to] [the Workers' Compensation Administration] as it pertains to billing by air medical providers and Defendant is required to pay [Med Flight] for

[Med Flight]'s normal and customary charges."  Motion for Judgment Reply at 1.  Med Flight contends that assignment, such as that of Woods to Med Flight, is "common practice in the medical industry . . . and legally could not[] expand any of Defendant's obligations."  Motion for Judgment Reply at 1-2.  Med Flight also contends that the amount it billed was the "amount normally charged."  Motion for Judgment Reply at 2.  Med Flight reiterates that the law "clearly shows" that it is entitled to full compensation "for amounts normally charged," that it "is in contractual privity, through assignment," and that the contract has been breached.  Motion for Judgment Reply at 2.

Regarding conversion of the Motion for Judgment into a summary judgment motion, the Motion for Judgment Reply provides that Med Flight "acknowledges that it is the Court's prerogative to consider matters outside the pleadings, attached as exhibits by either party, and thereby convert [Med Flight]'s Motion to a Motion for Summary Judgment."  Motion for Judgment Reply at 2 n.2 (citing Hartford Cas. Ins. Co. v. Trinity Universal Ins. Co., 158 F. Supp. 3d at 1196).  Med Flight then addresses the assignment issue, and provides that "[h]ealth care providers can, and regularly do, receive assignments from patients against insurers."  Motion for Judgment Reply at 2 (citing Webb Aff.)(explaining that Webb is Med Flight's Vice President, and that this assignment and billing is standard practice).  Med Flight argues that "the majority view is that healthcare providers may receive an assignment from patients."  Motion for Judgment Reply at 2-3 (citing Cagle v. Bruner, 112 F.3d 1510 (11th Cir. 1997), but explaining that the United States Court of Appeals for the Tenth Circuit has not yet addressed the issue).  Thus, Med Flight maintains that it received a valid assignment of Woods' insurance benefits through the standard procedures that were followed during his transport to UNMH.  See Motion for Judgment Reply at 3-4.  According to Med Flight, that assignment "did not expand

Defendant's obligations," because "an assignee . . . acquires by virtue of his assignment nothing more than the assignor had . . . ."  Motion for Judgment Reply at 5.

Med Flight next addresses whether it "billed the amount normally charged for the transport of Michael Woods."  Motion for Judgment Reply at 6.  According to Med Flight, the Workers' Compensation Administration "does not limit or set a price that air ambulance medical providers may charge for their services, unlike other medical services covered by the Act."  Motion for Judgment Reply at 6.  Instead, Med Flight states, the New Mexico Workers Compensation Act provides that "a health care provider shall be paid his usual and customary fee for services rendered or at the maximum charge established pursuant to Subsection A of this section, whichever is less."  Motion for Judgment Reply at 6 (citing New Mexico Workers' Compensation Act § 52-4-5(B))(emphasis omitted).  Med Flight argues that given the lack of a fee schedule under the New Mexico Workers' Compensation Act, the Airline Act preempts Builders Trust's affirmative defenses, because "Defendant is unilaterally attempting to set an air carrier's rates" by contesting this bill.  Motion for Judgment Reply at 6.  Med Flight then explains that Builders Trust contests that it charged the usual and customary amount solely by reference to the Frazier Aff., which Med Flight argues "appears on its face to be expert opinion regarding the market value of air ambulance services in New Mexico," and which Med Flight argues the Court should disregard, because expert testimony is not a substitute for facts.  Motion for Judgment Reply at 7.  Further, the Workers' Compensation Administration, according to Med Flight, "does not state that medical providers not covered by the Act's fee schedule can only be paid the usual and customary fee, but instead states that medical providers shall be paid their usual and customary fees which has been interpreted to mean the monetary fee that a practitioner normally charges."  Motion for Judgment Reply at 7.  Accordingly, the Med Flight submits that

it charged its "usual and customary fee" in this case.  Motion for Judgment Reply at 7 (citing the Webb Aff.).

      **10.**     **<ins>The January 23, 2017, Hearing</ins>.**

The Court held a hearing on January 23, 2017.  <ins>See</ins> Transcript of Hearing, taken January 23, 2017 ("Tr.").[22]  The Court began the hearing by requesting that the parties argue the MTD and Motion for Judgment together, and then indicated:

> I guess I'm not quite sure why these claims [can't] be assigned from an insured to a health care provider.  It seems like the biggest objection from Builders Trust is that it expands the right, but I guess you could just say it doesn't expand the right.  Whatever is assigned is no more or greater than what the individual insured has.  I guess I'm not seeing that that's a problem.  I guess I worry about does making these assignable undercut the workmen's comp act . . . and their ability to negotiate these flights and other health care providers, so I don't quite understand[] that and whether it would or not.  But it seems to me that the sort of privity and standing arguments and those sort of things that the defendant argues all fall by the wayside if this claim can be assigned.  And I guess I am inclined to think it can be.

Tr. at 2:16-3:11 (Court).  The Court also indicated that it had done work, in a different context, which required it to research the cost of a medivac transport, leading the Court to be "a little concerned about the total amount that was being charged.  It seemed high . . . I was a little bit skeptical that I could grant summary judgment on the amount."  Tr. at 3:20-4:14 (Court).  Additionally, the Court was hesitant to conclude that "I have jurisdiction over this."  Tr. at 4:14-18 (Court).

Builders Trust then argued, beginning with the issue of assignment, and stated that "[t]he assignment would run the risk that the rights would be greater and expanded."  Tr. at 5:13-15 (Sherrell).  Builders Trust explained that the operative fact is how the assignment of workers'

---

[22]The Court's citations to the transcript of the hearing refer to the court reporters original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

compensation rights will "undercut the workers' comp administration," because then the "health care providers would basically bypass the workers' comp administration, where you just have one administration that's looking at the bills and determining the reasonable[ness] and instead healthcare providers would be able to bypass [that procedure] and go to all the courts in the state." Tr. at 6:4-16 (Sherrell).  Builders Trust contended that, because the judges in court may vary in their decisionmaking, assignment potentially will alter its rights under the contracts it makes in the workers' compensation context.  See Tr. at 6:4-16 (Sherrell).  The Court then suggested:

> I can certainly see why our state court systems would be hostile to assignments against, for claims against the settlement amounts, because that would interfere with settlements by plaintiffs all the time if every health care provider received an assignment against the settlement.  So that probably would not be very popular with the trial lawyers and the lawyers that bring those sort of claims.  But in this situation, isn't it a plus for the workmen's comp employee to be able to just assign this and say basically, Here, you go collect the bill against the insurance company?

Tr. at 10:3-14 (Court).  Builders Trust argued, even if these insurance rights can be assigned, the Contract nonetheless did not allow for assignment without written consent.  See Tr. at 11:6-17 (Court).  Thus, according to Builders Trust, as a third-party beneficiary of Murphy Builders' contract for workers' compensation insurance with Builders Trust, Woods could not assign his rights under the Contract without Builders Trust's written consent.  See Tr. at 12:9-16 (Sherrell).

Med Flight next pointed to case law suggesting that individuals can make assignments to medical providers and that anti-assignment clauses are waived when benefits were paid despite the assignment.  See Tr. at 13:1-17 (Johnson).  Here, Med Flight argued, the assignment was valid, and Builders Trust's argument that the Contract does not allow assignments is futile, because it paid -- albeit not the full amount of the bill -- a portion of the benefits to the assignee, thus waiving its right to enforce the Contract on that issue.  See Tr. at 13:20-22 (Johnson).  Med

Flight then discussed how courts have declined to allow workers compensation to have an impact on "set[ting] fee rates for air ambulances." Tr. at 15:7-23 (Johnson). Next, however, Med Flight addressed once more the concern that there was a "greater and expanded assignment of rights," and argued that the assignment "doesn't expand on what Michael Woods was entitled to. Anybody is entitled to negotiate rates. This isn't going to make that any different." Tr. at 16:20-24 (Johnson). Med Flight continued by explaining that many workers' compensation insurance providers will, indeed, make agreements with air ambulance providers to avoid issues like the present one, and that Med Flight has made agreements with other insurance providers "and they've negotiated rates that are lower than [Med Flight]'s usual and customary fees." Tr. at 17:5-18:2 (Johnson). Med Flight also confirmed that this case does not involve "one of these situations where [Med Flight] is never getting its normal and customary rate," and that, where Med Flight has negotiated a rate with insurance companies, the extent of a discount is "10 to 15 percent." Tr. at 18:9-25 (Johnson).

Med Flight then addressed converting the Motion for Judgment to a summary judgment motion and explained:

> I believe that this boils down to a simple, we can throw a lot of the pleadings away in the sense that this boils down to there is no workers' comp rate that is set. If there were then the airline deregulation act would preempt that. So there is currently no WCA rate set. Because there is no WCA rate set, GMF is entitled to its usual and customary fees and we are saying that based on the facts. . . . I believe that we have the information to show that this is, the usual and customary fees [and that they] are reasonable based on the what is required to operate and to keep on a constant on-call basis.

Tr. at 20:13-21:15 (Johnson). Med Flight then considered whether the Court could grant its Motion for Judgment across the board, because the Court suggested that, while it might grant on liability, the damages still appeared to be disputed -- and Med Flight conceded that the Court could not grant summary judgment on damages at this stage. See Tr. at 21:20-24 (Johnson).

Med Flight then argued regarding jurisdiction, because the Court asked how it had jurisdiction, and explained that "[w]e originally filed in . . . state court. I believe that the . . . removal included the possibility of pu[n]tive damages in that. I don't know if this Court does have jurisdiction based on just the strict $40,000 it doesn't." Tr. at 22:1-5 (Johnson).

> Builders Trust responded and argued:
>
> There are, you could tell from conversations today, . . . numerous issues of facts for the fact finder that's not just matters related to law. We don't know what the reasonable and customary -- he talked about a formula of some sort. That's not in the pleadings. That's not in anything that the Court could consider for a motion on judgment on the pleadings. That's just a statement by counsel. We don't know what formula they use. We don't know whether it's reasonable or customary. We know it's Builders Trust, we've been dealing with Gallup Med flight and others like them for a long time, and we have negotiated rates down to the levels that we provided to them which is about 11 thousand dollars for this . . . Medicare [and] the CMS would set their rate for this flight . . . about $6,000. We had somebody look at whether or not this was reasonable and the customary that handles this issue across the country he said $12,000 is reasonable and customary based on the calculation that he allude[d] to of . . . this sort of thing. So there is a lot of issues of fact out there [and] not just on the issue of what a reasonable charges for this flight. But there are a lot of other issues raised in their motion judgment on the pleadings that -- so the Court should not grant this motion at this early stage, because we need to get . . . litigation . . . .

Tr. at 23:7-24:11 (Kaemper). The Court explained that Med Flight had conceded the Court could not grant the Motion for Judgment as to damages, but that on liability -- "privity, standing . . . ability to assign" -- it appeared as though it was strictly a matter of law. Tr. at 24:19-22 (Court). Builders Trust, accordingly, argued that it was unclear whether Woods, in signing the alleged assigning document, knew what he was doing and whether medical necessity supports the Med Flight emergency flight. See Tr. at 25:10-26:1 (Kaemper). Regarding jurisdiction, Builders Trust argued that "we removed the case on federal question because the plaintiff's complaint was heavy on the application of the [Airline Act]. We didn't remove it on diversity, because there is not diversity in this case . . . ." Tr. at 27:11-15 (Kaemper). The Court

explained, however, that "nobody is saying this claim is preempted, if we look at the claim that's

there and if it's just a state law breach of contract . . . those just sound like state claims, not

federal questions."  Tr. at 27:25-28:4 (Court).  Builders Trust responded that

> on the face of the plaintiff's complaint it seems to me the plaintiff [has] brought
> up the issue of preemption, the [Airline Act] preempting any state regulation that
> would challenge their decision of, you know, this is the amount we're owed and
> nobody gets to say what the reasonableness is. . . .  [B]ut then they seemed to
> back off of that in their motion as you saw, but they've still [hung] on to the
> argument that the [Airline Act] preempt[s] our affirmative defenses.

Tr. at 28:5-14 (Kaemper).

> Med Flight then concluded, arguing that

> the reason we talk about [affirmative defenses] being preempted by the [Airline
> Act], [is] because those affirmative defenses are attempting to set rates for [Med
> Flight], other than the usual and customary fee.  And reasonable comes into that,
> but those affirmative defenses and the reason that we pled the [Airline Act] is that
> first we said that the workers' comp, A, does not set an[y] fees, any rates [for] air
> ambulances.  If they had we talk about the [Airline Act] . . . preempt[ing] that.
> And then in their affirmative defenses . . . we argue [they are] attempting to set
> rates for our air ambulance[s].

Tr. at 29:4-17 (Johnson).  The Court then mused: "[D]oes your complaint raise this reverse

preemption issue, and what I understand by that, you're saying that your claims are not

preempted, and it looks like Builders Trust is saying the same thing . . . but you're [raising] the

issue that some of their mostly equitable defenses are preempted, right[?]"  Tr. at 29:25-30:6

(Court).  Med Flight responded that affirmative defenses -- not claims -- are preempted, and that

it "believe[d]" that preemption is in the face of its Complaint -- and

> I believe that our complaint is stating that the Workers Comp Act does not set
> fees.  And then once it was removed, we filed the motion for judgment on the
> pleadings, we're agreeing that the New Mexico Work Comp Act is not preempted
> by the [Airline Act] because it has not set fees.

Tr. at 30:10-16 (Johnson).  The Court pressed Med Flight, however, whether the argument that

the Airline Act's preemptive effect impacts Builders Trust's affirmative defenses arises on the

face of its Complaint, see Tr. at 31:5-13 (Court), and Med Flight stated: "I believe that the only

way it can be argued for in the Complaint . . . is that we argue that we're entitled to X amount of

dollars that has not yet been paid.  And that's because those are reasonable and customary fees as

allowed by the workers' comp act," and that reverse preemption was not mentioned at all in the

Complaint, Tr. at 31:20-32:4 (Johnson).   Med Flight continued by providing that, in its

Complaint, "paragraph 16 . . . referring to the [Airline Act], [states that] Congress included a

preemption provision in the [Airline Act] . . .  I believe that is likely the extent of what could be

argued as reverse preemption."  Tr. at 32:4-13 (Johnson).  The Court concluded:

> [A]ssuming I can satisfy myself I have jurisdiction over this case -- I don't think
> it's a standing issue, I think people have standing to argue an assignment and
> privity -- so it doesn't go off on any constitutional grounds, I don't believe.  So I
> think I can reach the merits of some of these claims and decide whether these
> claims can be assigned, probably whether the assignment was valid here.  It seems
> today that the defendant is raising a couple of additional issues, but if they
> weren't raised in the motion then I may not be able to decide those.  I do think the
> damages issue is probably going to preclude anything more than a partial
> summary judgment here.  I guess I'm inclined to think that these can be assigned.
> I'll give it some thought.  It seems to me that the fact that this is unusual in the
> sense there is a niche here in which nobody has really an incentive to assign is
> different from whether they can be assigned, so I'm inclined to think that I'll find
> that they can be assigned, but the right is not any greater than what Michael
> Woods had at the very beginning of this case.  The assignment can't expand it
> anymore.  And I may have to kind of stop around there.  That may be about all I
> can say on this, I'm not able to grant anyone a complete judgment across the
> board.  That's probably all the inclination I can give you today without spend[ing]
> some . . . time on these two motions.   I do think I can probably write them
> together even if I maybe have separate factual sections for the two motions . . . .

Tr. at 32:15-33:19 (Court).

## **LAW REGARDING RULE 12(B)(1) MOTIONS TO DISMISS**.

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those

cases authorized and defined in the Constitution which have been entrusted to them under a

jurisdictional grant by Congress."  Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th

- 39 -

Cir. 1994)(citations omitted).  A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.").  "[Because] federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." United States ex rel. Hafter v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1160 (10th Cir. 1999).  Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion.  Fed. R. Civ. P. 12(b)(1). The Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based."  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true.  See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981).  But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion.

Alto Eldorado Partners v. City of Santa Fe, 2009 WL 1312856, at *8-9 (D.N.M. 2009)(Browning, J.)(citations omitted), aff'd on other grounds by 634 F.3d 1170 (10th Cir. 2011).  The United States Court of Appeals for the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations,

and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortensen v. First Fed.

Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion, a party may go beyond the complaint's allegations to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court. See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment. See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). Where, however, the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56. See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippett v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997). "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'" Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).

## LAW REGARDING MOTIONS TO DISMISS UNDER RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency

of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

    A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp v. Twombly, 550 U.S. at 555 (citation omitted).

    To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical

possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The United States Court of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(citations omitted).

Although defendants must generally plea affirmative defenses in the defendant's answer, and not argue them on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions where: (i) the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss, see Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009); Robbins v. Oklahoma, 519 F.3d 1242 (10th Cir. 2008)); and (ii) where the facts establishing the affirmative defense are apparent on the complaint's face, see Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim.  If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule.").  The defense of limitations is the affirmative defense most likely to be established by the complaint's uncontroverted facts.  See 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure: Civil § 1277 (3d ed. 2014).  If the complaint sets forth dates that

appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6).  See Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).  The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute; the Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion.  Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, it is incumbent upon the plaintiff to plead, either in the complaint or in amendments to it, facts establishing an exception to the affirmative defense).  It appears, from case law in several circuits, that the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by simply refraining from pleading specific or identifiable dates, see Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006); Harris v. New York, 186 F.3d 243, 251 (2d Cir. 1999); Honeycutt v. Mitchell, 2008 WL 3833472 (W.D. 2008)(West, J.), and, although the Tenth Circuit has not squarely addressed this practice, the Court has permitted it, see Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1235-36 (D.N.M. 2014)(Browning, J.).

### LAW REGARDING JUDGMENT ON THE PLEADINGS UNDER RULE 12(c)

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the

parties.  See Kruzitis v. Okuma Mach. Tool, Inc., 40 F.3d 52, 54 (3d Cir. 1994)("Under Rule 12(c), we will not grant judgment on the pleadings unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  (citation and internal quotation marks omitted)).  A "[j]udgment on the pleadings should not be granted 'unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'"  Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa., 442 F.3d 1239, 1244 (10th Cir. 2006)(citing United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)).  Claims dismissed pursuant to a motion under rule 12(c) are dismissed with prejudice. See In re Great Lakes Dredge & Dock Co. LLC, 624 F3.d 201, 209 (5th Cir. 2010).

"Any party may move for judgment on the pleadings if no material facts are in dispute and the dispute can be resolved on both the pleadings and any facts of which the Court can take judicial notice."  Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304 (citing Fed. R. Civ. P. 12(c)).  A motion pursuant to rule 12(c) is generally treated in the same manner as a motion to dismiss under rule 12(b)(6).  See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304 (citing Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998)).  A motion for a judgment on the pleadings will be granted if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law.  See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304.

A court considering a motion for judgment on the pleadings should "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same."  Park Univ. Enters. Inc. v. Am. Cas. Co. of Reading, Pa., 442 F.3d at 1244. The court must view the facts presented in the pleadings and draw the inferences therefrom in the

light most favorable to the nonmoving party.  See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304.  All of the nonmoving parties' allegations are deemed to be true, and all of the movants' contrary assertions are taken to be false.  See Nat'l Metro. Bank v. United States, 323 U.S. 454, 456-57 (1945); Ramirez v. Dep't of Corr., 222 F.3d 1238, 1240 (10th Cir. 2000); Freeman v. Dep't of Corr., 949 F.2d 360, 361 (10th Cir. 1991).

The same standards that govern a motion to dismiss under rule 12(b)(6) also govern a motion for judgment on the pleadings under rule 12(c).  See Atl. Richfield Co. v. Farm Credit Bank, 226 F.3d 1138, 1160 (10th Cir. 2000).  Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  A complaint's sufficiency is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all of the complaint's well-pleaded factual allegations, view those allegations in the light most favorable to the nonmoving party, and draw all reasonable inferences in the plaintiff's favor.  See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly,

550 U.S. at 555 (citation omitted).  "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 558, 562).  "The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(alterations omitted).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d at 1177.  The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.
>
> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them.  "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1965 n.3.  See Airborne Beepers & Video, Inc. v. AT&T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007)("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.").  The Twombly Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies."  127 S. Ct. at 1971 n.10.  Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin."  Id.

Robbins v. Oklahoma, 519 F.3d at 1247-48 (footnote and citations omitted).

In determining the complaint's sufficiency, all well-pleaded factual allegations are to be taken as true.   See Timpanogos Tribe v. Conway, 286 F.3d 1195, 1204 (l0th Cir. 2002). "Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Belman, 935 F.2d 1106, 1110 (l0th Cir. 1991).   "Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." Hall v. Belman, 935 F.2d at 1110.   Only well-pleaded facts, as distinguished from conclusory allegations, are admitted when considering a motion to dismiss for failure to state a claim upon which relief can be granted.   See Smith v. Plati, 258 F.3d 1167, 1174 (10th Cir. 2001).

A court must convert a motion to dismiss into a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court," and "all parties . . . [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(d).   Facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment.   See Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1279 n.1 (10th Cir. 2004)(citing 27A Federal Procedure, Lawyers' Ed. § 62:520 (2003)).   Furthermore, when considering a motion to dismiss, "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir.2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001).   A court may consider documents to which the complaint refers if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.   See Jacobsen v. Deseret Book Co., 287 F.3d 936, 941-42 (10th Cir. 2002).   If, however, a complaint does not reference or

attach a document, but the complaint refers to the document and the document is central to the plaintiff's claim, the defendant may submit an "indisputably authentic copy to the court to be considered on a motion to dismiss."  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).  See 5A Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 1327 (3d ed. 2004)("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading . . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading.").

## LAW REGARDING MOTIONS FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'"  Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013) (Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

> Before the court can rule on a party's motion for summary judgment, the moving party must satisfy its burden of production in one of two ways: by putting evidence into the record that affirmatively disproves an element of the nonmoving party's case, or by directing the court's attention to the fact that the non-moving party lacks evidence on an element of its claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323-25.  On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts to make a showing sufficient to establish the existence of an element essential to his case in order to survive summary judgment." Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007).

Plustwik v. Voss of Norway ASA, 2013 WL 1945082, at *1 (D. Utah 2013)(Sam, J.)(emphasis

added).[23]  "If the *moving* party will bear the burden of persuasion at trial, that party must support

_____

[23]The Supreme Court's decision in Celotex Corp. v. Catrett, approved the award of no-evidence summary judgments in federal court.  See Celotex Corp. v. Catrett, 477 U.S. at 323-25. Under the federal standard that Celotex Corp. v. Catrett provides, if the issue is one on which the movant does not bear the burden of proof, and an adequate time for discovery has passed, summary judgment is warranted if the non-movant does not make a showing sufficient to establish the existence of each element essential to its cause of action.  See 477 U.S. at 322-23. The Supreme Court explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  "[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a) . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  But unlike the Court of Appeals, we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.  On the contrary, Rule 56(c), which refers to "the affidavits, *if any*" (emphasis added), suggests the absence of such a requirement. And if there were any doubt about the meaning of Rule 56(c) in this regard, such doubt is clearly removed by Rule 56(a) and (b), which provide that claimants and defendants, respectively, may move for summary judgment "*with or without supporting affidavits*" (emphasis added).  The import of these subsections is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied.  One of the principal purposes of the summary judgment rule is to isolate and dispose of factually

- 50 -

its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial." Celotex Corp. v. Catrett, 477 U.S. at 331 (Brennan, J., dissenting)(emphasis in original).[24]   Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotation marks omitted).  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the

---

unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.

Celotex Corp. v. Catrett, 477 U.S. at 322-24.

[24]Although the Honorable William J. Brennan, Jr., Associate Justice of the Supreme Court of the United States, dissented in Celotex Corp. v. Catrett, this sentence is widely understood to be an accurate statement of the law.  See 10A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." (citation omitted)(internal quotation marks omitted)).

Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (D. Kan. 2008)(Robinson, J.)(citing Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448

(1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted). Where a rational trier of fact, considering the record as a whole, could not find for the nonmoving party, there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Anderson v. Liberty Lobby, Inc., 477 U.S. at 254. Third, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor, and construe all evidence in the light most favorable to the nonmoving party. See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Fourth, the court cannot decide any credibility issues. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts. This doctrine developed most robustly in the qualified immunity arena. In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court concluded that summary judgment was

appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts.

550 U.S. at 378-81.  The Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.  Fed. Rule Civ. Proc. 56(c).  As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. [at] 586-587 . . . (footnote omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. [at] 247-248 . . . .  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life.  Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him.  The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

Scott v. Harris, 550 U.S. at 380-81 (emphasis in original).

The Tenth Circuit applied this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304

(10th Cir. 2009), and explained:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts."  York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting Scott, 550 U.S. at 380); see also Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cnty., 584 F.3d at 1312 (brackets omitted).  "The Tenth Circuit, in Rhoads

v. Miller, [352 F. App'x 289 (10th Cir. 2009)(Tymkovich, J.)(unpublished),[25]] explained that the

blatant contradictions of the record must be supported by more than other witnesses'

testimony[.]"    Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)

(Browning, J.)(citation omitted), aff'd, 499 F. App'x 771 (10th Cir. 2012).

> In evaluating a motion for summary judgment based on qualified immunity, we take the facts "in the light most favorable to the party asserting the injury."  Scott v. Harris, 550 U.S. 372, 377 (2007).  "[T]his usually means adopting . . . the plaintiff's version of the facts," id. at 378, unless that version "is so utterly discredited by the record that no reasonable jury could have believed him," id. at 380.  In Scott, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the events.  550 U.S. at 379.  Here, there is no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads' testimony.  There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury.  And given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory problems go to the weight of his testimony, not its admissibility . . . .  Mr. Rhoads alleges that his injuries resulted from a beating rendered without resistance or provocation. If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law under Graham v. Connor, 490 U.S. 386, 395-96 (1989), and this court's precedent.

Rhoads v. Miller, 352 F. App'x at 291-92 (internal quotation marks omitted).  See Lymon v.

Aramark Corp., 728 F. Supp. 2d at 1249-50 (quoting Rhoads v. Miller, 352 F. App'x at 291-92).

---

[25]Rhoads v. Miller is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court concludes that Rhoads v. Miller, Muller v. Culbertson, 408 F. App'x at 197,  and Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x at 778, have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion.

In a concurring opinion in <u>Thomson v. Salt Lake County</u>, the Honorable Jerome A. Holmes, United States Circuit Judge for the Tenth Circuit, stated that courts must focus first on the legal question of qualified immunity and "determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the legal question before the court," before inquiring into whether there are genuine issues of material fact for resolution by the jury. 584 F.3d at 1326-27 (Holmes, J., concurring)(citing <u>Goddard v. Urrea</u>, 847 F.2d 765, 770 (11th Cir. 1988)(Johnson, J., dissenting))(observing that, even if factual disputes exist, "these disputes are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the plaintiffs' facts"). <u>See generally</u> <u>American Mechanical Solutions, LLC, v. Northland Processing Piping, Inc.</u>, 2016 WL 3135646, at *1 (D.N.M. 2016)(Browning, J.)(concluding, where defendant produced expert testimony indicating that hoses were fit for their particular purpose, and where plaintiff failed to produce evidence creating a genuine issue of material fact on that issue, that defendant was entitled to summary judgment on the plaintiff's breach-of-the-implied-warranty-of-fitness-for-a-particular-purpose claim).

## LAW REGARDING FEDERAL-QUESTION JURISDICTION

A federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal-question jurisdiction exists when "a federal question is presented on the face of the plaintiff's properly pleaded complaint." <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987)(citing <u>Gully v. First Nat'l Bank</u>, 299 U.S. 109, 112-13 (1936)). As "the master of the claim," the plaintiff may choose to sue in state court rather than in federal court "by exclusive reliance on state law." <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. at 392.

The defendant may not try to sneak a federal question through the back door by raising a federal defense, for "it is now settled law that a case may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar, Inc. v. Williams, 482 U.S. at 393 (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 12 (1983)).  See Nicodemus v. Union Pac. Corp., 318 F.3d 1231, 1236 (10th Cir. 2003)("It is well settled that '[a] defense that raises a federal question is inadequate to confer federal jurisdiction.'"   (quoting Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 808 (1986))).  While a plaintiff is free to plead a federal question in his complaint, "a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." Caterpillar, Inc. v. Williams, 482 U.S. at 399.  Even the plaintiff can go only so far in attempting to invoke federal-question jurisdiction, because "[a]ny statements in the complaint which go beyond a statement of the plaintiff's claim and anticipate or reply to a probable defense are to be disregarded" in deciding whether federal-question jurisdiction exists.  Mescalero Apache Tribe v. Martinez, 519 F.2d 479, 481 (10th Cir. 1975).

In addition to the requirement that the federal question appear on the complaint's face, a "plaintiff's cause of action must either be: (i) created by federal law; or (ii) if it is a state-created cause of action, 'its resolution must necessarily turn on a substantial question of federal law.'" Nicodemus v. Union Pac. Corp., 318 F.3d 1231, 1235 (10th Cir. 2003)(quoting Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. at 808).  As for the second method, beyond the requirement of a "substantial" federal-law question at the case's heart, the federal question must

also be "actually disputed," and its resolution must be necessary to the case's resolution.  Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).  Finally, the exercise of federal-question jurisdiction must also be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."  Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. at 313.  In particular, the court must determine whether recognition of federal-question jurisdiction will federalize a "garden variety" state law claim that will overwhelm the judiciary with cases traditionally heard in state courts.  Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. at 318-19 (explaining that "there must always be an assessment of any disruptive portent in exercising federal jurisdiction" in accepting "garden variety" state law claims).  See also David L. Hanselman, Supreme Court Federal Removal Jurisdiction, For the Defense at 25, 65, September 2005 ("The most important consideration is whether removal would federalize a garden-variety tort, contract, or fraud claim, or whether there is some uniquely federal aspect of the case that, if removed, could be adjudicated in federal court without subjecting the federal courts to a flood of original filings or removals.").

    The Supreme Court has underscored that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."  Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. at 813.  Indeed, the Supreme Court has "forcefully reiterated" that district courts must exercise "prudence and restraint" when determining whether a state cause of action presents a federal question, because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system," Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. at 810.  See Morris v. City of Hobart, 39 F.3d 1105, 1111 (10th Cir. 1994).

Under the well-pleaded complaint rule, the federal question giving rise to jurisdiction must appear on the complaint's face.  See Karnes v. Boeing Co., 335 F.3d 1189, 1192 (10th Cir. 2003).  This rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  See Schmeling v. NORDAM, 97 F.3d 1336, 1339 (10th Cir. 1996).

Where a federal question appears on the well-pleaded complaint's face, federal jurisdiction is not automatic.  Federal jurisdiction requires not only a contested federal issue, but a substantial one, indicating a serious federal interest in seeking the advantages thought to be inherent in a federal forum.  See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313 (2005).  The federal issue will qualify for a federal forum if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331.  See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. at 313-14.

In Bar J Sand & Gravel, Inc. v. W. Mobil N.M. Inc., 2005 WL 3663689 (D.N.M. 2005)(Browning, J.), the plaintiff's complaint stated causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and unfair trade practices. See 2005 WL 3663689, at *7.  The defendants argued that a federal question was apparent on the complaint's face

> because, as a necessary first step in proving a breach of contract, Bar J must show that a valid contract actually exists between Bar J and the Defendants. To establish that the parties entered into a valid contract, Bar J must show that all conditions precedent were met, including Bar J's possession of a valid [Sand and Gravel] Permit [that the Pueblo of San Felipe issued to Bar J Trucking, Inc.]. In turn, whether Bar J acquired a valid Permit requires reference to the federal regulations governing the issuance of those permits. Reaching the last link in their chain of argument, the Defendants assert that the federal question is whether the creation of the Permit complied with those regulations.

2005 WL 3663689, at *8 (internal citations omitted).  The Court determined that the defendants'

argument confused "a condition precedent to contract <u>performance</u> with a condition precedent to

contract <u>formation</u>," and that the argument was raising an issue of federal law as a potential

defense, rather than as an element of the plaintiff's case; accordingly, the issue did not appear on

the face of the plaintiff's complaint.  2005 WL 3663689, at *8-9 (emphasis in original).  The

defendants also argued that a decision whether the plaintiffs validly assigned the Permit to the

defendants would raise an issue of federal law, because, "[u]nder federal regulations, an

assignment of the Permit would be invalid without approval by the Secretary of the Interior"; the

Court rejected this argument, because the plaintiff did not request "vindication of any

assignment" in the complaint, and the Court determined the plaintiff was justified in that choice.

2005 WL 3663689, at *9.  The Court further determined that the Supreme Court's decision in

<u>Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.</u> did not change the result, because,

> [u]nlike <u>Grable</u>, Bar J does not premise its breach of contract claim on any point
> of federal law.  Bar J does not assert that it has a right to recover from the
> Defendants because of the existence of some federal law. Bar J argues neither that
> the Defendants violated a federal statute nor that the [contract's] validity requires
> the interpretation or application of any provision of the United States Code.

<u>Bar J Sand & Gravel, Inc. v. W. Mobil N.M. Inc.</u>, 2005 WL 3663689, at *12 (internal citations

omitted).  The Court concluded that, because the plaintiff grounded its right to relief in "basic

contract law," without "referencing any federal law," the well-pleaded complaint did not raise an

issue of federal law and, thus, the Court did not have federal-question jurisdiction.  2005 WL

3663689, at *13.

In <u>Olsen v. Quality Continuum Hospice, Inc.</u>, 380 F. Supp. 2d 1225 (D.N.M.

2004)(Browning, J.), the Court determined that the plaintiff's claims did not present any federal

questions; although the plaintiff asserted that the defendants violated the "United States Social

Security Act of 1968 [and] . . . the Medicare program,"[26] the Court concluded that those provisions do not create a private right of action and, thus, did not create the plaintiff's causes of action.  380 F. Supp. 2d at 1229.  The Court also determined that, because the plaintiff's causes of action were essentially medical malpractice claims and arose under New Mexico common law or New Mexico statutes, they would not depend on resolution of a question of federal law.  See 380 F. Supp. 2d at 1230-31.

To reiterate, a plaintiff may not, however, circumvent federal jurisdiction by omitting federal issues that are essential to his or her claim.  See Schmeling v. NORDAM, 97 F.3d at 1345 n.2.  "A case arises under federal law if its 'well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"  Morris v. City of Hobart, 39 F.3d 1105, 1111 (10th Cir. 1994)(quoting Franchise Tax Board v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983)).  Thus, even though a plaintiff asserts claims only under state law, federal-question jurisdiction may be appropriate if the state-law claims implicate significant federal issues.  See Nicodemus v. Union Pacific Corp., 440 F.3d at 1232.  As well, jurisdiction requires more than just a federal question: "It is by now axiomatic that 'federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum.'"  Nicodemus v. Union Pac. Corp., 440 F.3d at 1232 (quoting Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. at 313).  See Lucero v. Ortiz, 163 F. Supp. 3d 920, 922 (D.N.M. 2015)(Browning, J.)(remanding case to state court where federal question jurisdiction did not exist, because grounds for removal were based on a cross claim); Williams v. Board of Regents of University

---

[26]Social Security Act of 1965, Pub. L. 89-97, 79 Stat. 286, and Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. 108-173, 117 Stat. 2066.

of New Mexico, 990 F. Supp. 2d 1121, 1145-47 (D.N.M. 2014)(Browning, J.)(concluding that a plaintiff's state law claims formed the same case or controversy as a federal claim, warranting jurisdiction over the federal claim and supplemental jurisdiction over the state clams); Shay v. RWC Consulting Group, 2014 WL 3421068, at *1 (D.N.M. 2014)(Browning, J.)(dismissing federal-question claims, and remanding state claims that were all which remained).

## LAW REGARDING SUPPLEMENTAL JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).  Federal courts "possess only that power authorized by [the] Constitution and statute."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal-question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction.  See  28 U.S.C. §§ 1331-32.

1.    **Congressional Authority.**

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552.  The Supreme Court has long subscribed to the concept of supplemental jurisdiction recognized in three common-law doctrines -- pendent, ancillary, and pendent party jurisdictions -- the former two of which survive today.  The term "supplemental jurisdiction" is now used to refer collectively to the doctrines of ancillary jurisdiction and pendent jurisdiction.  28 U.S.C. § 1367, statutorily codifying Owen Equip. & Erection Co. v.

Kroger, 437 U.S. 365 (1978)(outlining the doctrine of ancillary jurisdiction), and United Mine

Workers of Am. v. Gibbs, 383 U.S. 715 (1966)(outlining the doctrine of pendent jurisdiction),

and invalidating Finley v. United States, 490 U.S. 545 (1989)(outlining the now-defunct doctrine

of pendent-party jurisdiction).  Federal courts may exercise pendent jurisdiction over state-law

claims when "state and federal claims . . . derive from a common nucleus of operative fact."

United Mine Workers v. Gibbs, 383 U.S. at 725.  Supplemental jurisdiction gives federal courts

the flexibility to hear a cause of action after the introduction of third parties whose insertion into

the litigation lacks support of any independent grounds for federal jurisdiction, when those

parties share a common interest in the outcome of the litigation and are logical participants in

it.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. at 375 n.18.

In 1988, the Honorable William H. Rehnquist, Chief Justice of the United States, created

the Federal Courts Study Committee to analyze the federal court system and to recommend

reforms.  See James v. Chavez, 2011 WL 6013547, at *5 (D.N.M. 2011)(Browning, J.)(citing 16

James Wm. Moore et al., Moore's Federal Practice § 106.04[5]).  In response to the Committee's

findings regarding "pendent" and "ancillary" jurisdiction, Congress codified the application of

the two doctrines when it passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the
> district courts shall have supplemental jurisdiction over all other claims that are so
> related to claims in the action within such original jurisdiction that they form part
> of the same case or controversy under Article III of the United States
> Constitution.  Such supplemental jurisdiction shall include claims that involve the
> joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district

courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the

rules on claim and party joinder to deal economically -- in single rather than multiple litigation --

with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

      **2.**     **District Court Discretion.**

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction, not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction.  383 U.S. at 726.  Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

    (1)    the claim raises a novel or complex issue of State law,

    (2)    the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3)    the district court has dismissed all claims over which it has original jurisdiction, or

    (4)    in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity."  Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions

of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction.  See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("[S]ection 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); Executive Software N. Am. v. U.S. Dist. Court, 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994) ("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c)."); Bonadeo v. Lujan, 2009 WL 1324119, at *8 (D.N.M. 2009)(Browning, J.)("28 U.S.C. § 1367(c) changed the district courts' supplemental jurisdiction discretion analysis to prohibit courts from declining jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists.").  Other district courts in the Tenth Circuit besides this Court have reached the same conclusion.  See Gudenkauf v. Stauffer Commc'ns, Inc., 896 F. Supp. 1082, 1084 (D. Kan. 1995)(Crow, J.)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the existence of one of the four conditions enumerated.").  See also S.R. v. Hilldale Independent School Dist. No. I-29 of Muskogee Cnty., Okla., 2008 WL 2185420, at *5 (E.D. Okla. 2008)(White, J.)(citing Gudenkauf v. Stauffer Commc'ns, Inc., 896 F. Supp. at 1084).

The Tenth Circuit has held that district courts should generally decline jurisdiction over state claims when federal claims no longer remain: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining

state claims." Koch v. City of Del City, 660 F.3d at 1228, 1248 (10th Cir. 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)).  The Supreme Court has also recognized:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Amer. v. Gibbs, 383 U.S. at 726.  The Court has previously stated that a district court should usually decline to exercise supplemental jurisdiction when one of the 28 U.S.C. § 1367(c) factors applies.  See Armijo v. New Mexico, 2009 WL 3672828, at *4 (D.N.M. 2009)(Browning, J.).  The Tenth Circuit has recognized that a district court does not "abuse discretion" when it declines to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it 'has dismissed all claims over which it has original jurisdiction.'"  Muller v. Culbertson, 408 F. App'x 194, 197 (10th Cir. 2011)(unpublished)(quoting 28 U.S.C. § 1367(c)(3)).  See Williams v. Board of Regents of University of New Mexico, 990 F. Supp. 2d at 1145-47 (concluding that a plaintiff's state law claims formed the same case or controversy as a federal claim, warranting jurisdiction over the federal claim and supplemental jurisdiction over the state claims); Shay v. RWC Consulting Group, 2014 WL 3421068, at *1 (dismissing federal-question claims, and remanding state claims that were all which remained).

## LAW REGARDING REMOVAL AND REMAND

If a civil action filed in state court satisfies the requirements for original federal jurisdiction -- meaning, most commonly, federal-question or diversity jurisdiction -- the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court

"embracing the place where such action is pending."  28 U.S.C. § 1441(a).  See Huffman v. Saul
Holdings LP, 194 F.3d 1072, 1076 (10th Cir. 1999)("When a plaintiff files in state court a civil
action over which the federal district courts would have original jurisdiction based on diversity
of citizenship, the defendant or defendants may remove the action to federal court. . . ." (quoting
Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996))).  Under 28 U.S.C. § 1331, a federal district
court possesses original subject-matter jurisdiction over a case "arising under the Constitution,
laws, or treaties of the United States." 28 U.S.C. § 1331.

### 1.     The Presumption Against Removal.

Federal courts are courts of limited jurisdiction; thus, there is a presumption against
removal jurisdiction, which the defendant seeking removal must overcome.  See Laughlin v.
Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995); Fajen v. Found. Reserve Ins. Co., 683 F.2d 331,
333 (10th Cir. 1982); Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290 (10th Cir. 2001);
Bonadeo v. Lujan, 2009 WL 1324119, at *4 ("Removal statutes are strictly construed, and
ambiguities should be resolved in favor of remand.").  The defendant seeking removal must
establish that federal court jurisdiction is proper "by a preponderance of the evidence."  McPhail
v. Deere & Co., 529 F.3d 947, 953 (10th Cir. 2008). See Bonadeo v. Lujan, 2009 WL 1324119,
at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts
and of establishing a right to removal.").  See also McPhail v. Deere & Co., 529 F.3d 947, 955
(10th Cir. 2008)("It would have been more precise to say that the defendant must affirmatively
establish jurisdiction by proving jurisdictional facts. . . .").  Because federal courts are courts of
limited jurisdiction, the Tenth Circuit has ruled that "courts must deny such jurisdiction if not
affirmatively apparent on the record."  Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F.
App'x 775, 778 (10th Cir. 2005)(unpublished).  On the other hand, this strict construction and

presumption against removal should not be interpreted as hostility toward removal cases in the federal courts.  See McEntire v. Kmart Corp., 2010 WL 553443, at *2 (D.N.M. 2010)(Browning, J.)(citing Bonadeo v. Lujan, 2009 WL 1324119, at *12 ("Strict construction does not mean judicial hostility toward removal. Congress provided for removal, and courts should not create rules that are at tension with the statute's language in the name of strict construction.")).

> **2.    Procedural Requirements for Removal.**

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed."  Thompson v. Intel Corp., 2012 WL 3860748, at *5 (D.N.M. 2012)(Browning, J.).  A removal that does not comply with the express statutory requirements is defective and must be remanded to state court.  See Huffman v. Saul Holdings Ltd. P'Ship, 194 F.3d 1072, 1077 (10th Cir. 1999).  See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) of Title 28 of the United State Code provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  28 U.S.C. § 1446(a).  Such notice of removal is proper if filed within thirty days from the date when the case qualifies for federal jurisdiction.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b).  The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction is available.  Akin v. Ashland Chem.

Co., 156 F.3d 1030, 1036 (10th Cir. 1998).  The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist."  Akin v. Ashland Chem. Co., 156 F.3d at 1036.[27]

---

[27]In 2011, Congress clarified removal jurisdiction and procedures in the Federal Courts Jurisdiction and Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 (2011).  See Thompson v. Intel Corp., 2012 WL 3860748, at *12 n.5 (D.N.M 2012)(Browning, J.).

> On December 7, 2011, President Obama signed into law the Federal Courts Jurisdiction and Venue Clarification Act of 2011, which is intended to clarify the operation of federal jurisdictional statutes and facilitate the identification of the appropriate state or federal courts in which actions should be brought [see Pub. L. No. 112-63, 125 Stat. 758 (2011)].

> . . . .

> Section 103 of the Act makes several changes to removal and remand procedures. 28 U.S.C. § 1446 is amended to cover removal procedures for civil cases only; provisions governing removal of criminal prosecutions have been moved into new 28 U.S.C. § 1455 [Pub. L. No. 112-63, § 103(b), (c), 125 Stat. 758 (2011)].

> Section 103 of the Act also amends 28 U.S.C. § 1441(c) to provide that, on the removal of any civil action with both removable claims and nonremovable claims (i.e., those outside of the original or supplemental jurisdiction of the district court), the district court must sever all nonremovable claims and remand them to the state court from which the action was removed. The amendment also provides that only defendants against whom a removable claim has been asserted need to join in or consent to removal of the action. [Pub. L. No. 112-63, § 103(a), 125 Stat. 758 (2011)].

> Section 103 also amends 28 U.S.C. § 1446(b) to provide that, in a multi-defendant case, each defendant will have 30 days from his or her own date of service (or receipt of initial pleading) to seek removal. Earlier-served defendants may join in or consent to removal by a later-served defendant [Pub. L. No. 112-63, § 103(a), 125 Stat. 758 (2011)]. These provisions are intended to resolve a circuit split over when the 30-day removal period begins to run in cases in which not all defendants are served at the same time [see H.R. Rep. No. 112-10, at 13-14 (2011); see, e.g., Bailey v. Janssen Pharm., Inc., 536 F.3d 1202 (11th Cir. 2008)(30-day period runs from date of service on last-served defendant, and earlier-served defendants may join in last-served defendant's timely removal);

## LAW REGARDING PREEMPTION

Article VI, clause 2, of the Constitution provides that the laws of the United States "shall be the Supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  Consistent with the Supremacy Clause, the Supreme Court has "long recognized that state laws that conflict with federal law are 'without effect.'"  Altria Grp., Inc. v. Good, 555 U.S. 70, 75 (2008)(quoting Maryland v. Louisiana., 451 U.S. 725, 746 (1981)).  The Supreme Court has summarized the situations in which preemption is likely to be found:

> Pre-emption may be either expressed or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.  Absent explicit pre-emptive language, we have recognized at least two types of implied pre-emption:  field pre-emption, where the scheme of federal regulation is so pervasive as to make reasonable the

---

Marano Enters. v. Z-Teca Rests., LP, 254 F.3d 753 (8th Cir. 2011)(each defendant has 30 days to effect removal, regardless of when or if other defendants have sought to remove); Getty Oil Corp. v. Ins. Co. of N. Am., 841 F.2d 1254 (5th Cir. 1988)(first-served defendant and all then-served defendants must join in notice of removal within 30 days after service on first-served defendant)].

Section 103 also enacts a new subdivision (c) of 28 U.S.C. § 1446, containing provisions governing the procedures for removal. These include new authorization for a notice of removal in a diversity case to assert the amount in controversy if the initial pleading seeks (1) nonmonetary relief, or (2) a money judgment when state practice either does not permit a demand for a specific sum or permits the recovery of damages in excess of the amount demanded. Also part of a new subdivision (c) of 28 U.S.C. § 1446 is a provision allowing removal of a case based on diversity of citizenship more than one year after commencement of the action if the district court finds that the plaintiff acted in bad faith in order to prevent a defendant from removing the action (such as by deliberately failing to disclose the amount in controversy) [Pub. L. No. 112-63, § 103(b), 125 Stat. 758 (2011)].

Thompson v. Intel Corp., 2012 WL 3860748, at *12 n.5 (quoting 16 J. MOORE, D. COQUILLETTE, G. JOSEPH, S. SCHREIBER, G. VAIRO, & C. VARNER, MOORE'S FEDERAL PRACTICE § 107.30[2][a][iv], at 107SA-1 to 107SA-2 (3d ed. 2013)).

inference that Congress left no room for the States to supplement it, and conflict pre-emption, where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

Gade v. Nat'l Solid Wastes Mgmt. Assoc., 505 U.S. at 98 (citations omitted).

Preemption may be express or implied.  See Gade v. Nat'l Solid Wastes Mgmt. Assoc., 505 U.S. at 98.  When faced with express preemption -- where a statute expressly states that it preempts certain areas of state law -- a court must determine the scope of the preemption that Congress intended.  See Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)(stating that "the purpose of Congress is the ultimate touch-stone in every pre-emption case").  "Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose."  Altria Grp., Inc. v. Good, 555 U.S. at 77.  When the preemption clause's text is susceptible to more than one plausible reading, courts ordinarily "accept the reading that disfavors pre-emption."  Bates v. Dow Agrosciences, LLC, 544 U.S. 431, 449 (2005).  Preemption arguments are analyzed under rule 12(b)(1).  See Cedars-Sinai Med. Center v. Nat'l League of Postmasters of U.S., 497 F.3d 972, 975 (9th Cir. 2007)(applying rule 12(b)(1) when reviewing motion to dismiss asserting preemption defense).

Addressing express preemption requires a court to determine the preemption's scope. That task entails scrutinizing the preempting words in light of two presumptions, first,

> [i]n all pre-emption cases, and particularly in those in which Congress has legislated . . . in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

Medtronic, Inc. v. Lohr, 518 U.S. at 485 (citations and internal quotation marks omitted).

Second, "[t]he purpose of Congress is the ultimate touchstone in every pre-emption case."

Medtronic, Inc. v. Lohr, 518 U.S. at 485 (citations and internal quotation marks omitted).

> Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the statutory framework surrounding it. Also relevant, however, is the structure and purpose of the statute as a whole, as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law.

Medtronic, Inc. v. Lohr, 518 U.S. at 486 (citations and internal quotation marks omitted).

In a recent express preemption decision, see Bruesewitz v. Wyeth, LLC, 562 U.S. 223 (2011), the Supreme Court concluded that the National Childhood Vaccine Injury Act, 42 U.S.C.A. §§ 300aa-11(c)(1), 300aa-13(a)(1)(A), preempted all design-defect claims that the plaintiffs seeking compensation brought against vaccine manufacturers for injury or death that certain vaccine side effects caused. See 562 U.S. at 230. The Supreme Court noted that Congress passed this act to "stabilize the vaccine market and facilitate compensation." 562 U.S. at 228. The Supreme Court noted that this federal statutory scheme provided for "[f]ast, informal adjudication," allowing "[c]laimants who show that a listed injury first manifested itself at the appropriate time are prima facie entitled to compensation." 562 U.S. at 228. Additionally,

> [a] claimant may also recover for unlisted side effects, and for listed side effects that occur at times other than those specified in the Table, but for those the claimant must prove causation. Unlike in tort suits, claimants under the Act are not required to show that the administered vaccine was defectively manufactured, labeled, or designed.

562 U.S. at 228-29 (footnote omitted). The Supreme Court also noted that the statutory scheme has relatively favorable remedy provisions. See 562 U.S. at 229. "The quid pro quo for this, designed to stabilize the vaccine market, was the provision of significant tort-liability protections for vaccine manufacturers," such as limiting the availability of punitive damages and expressly eliminating liability for a vaccine's unavoidable, adverse side effects. 562 U.S. at 229. The statutory text at issue in Bruesewitz v. Wyeth, LLC was as follows:

- 72 -

No vaccine manufacturer shall be liable in a civil action for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, if the injury or death resulted from side effects that were unavoidable even though the vaccine was properly prepared and was accompanied by proper directions and warnings.

562 U.S. at 230 (quoting 42 U.S.C. § 300aa-22(b)(1)).  The Supreme Court emphasized the use of the word "unavoidable" in reaching its conclusion that the statute preempts design defect claims resulting from unavoidable side effects.  562 U.S. at 231-32.  The Supreme Court also found it persuasive that the statutory text directly mentioned other aspects of product liability law.  See 562 U.S. at 232-33.

Implied conflict preemption exists when it is impossible for a private party to comply with both state and federal requirements, see English v. General Elec. Co., 496 U.S. 72, 78-79 (1990), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Hines v. Davidowitz, 312 U.S. 52, 67 (1941).  "Pre-emptive intent may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law."  Hines v. Davidowitz, 312 U.S. at 67 (citing Freightliner Corp. v. Myrick, 514 U.S. 280, 287 (1995)).

The Supreme Court, in the past, found that implied preemption may take the form of "obstacle" preemption.  Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 373 (2000) (holding that preemption is appropriate where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"); Pharm. Research and Mfrs. of Am. v. Walsh, 538 U.S. 644, 679 (2003)(Thomas, J., concurring)("Obstacle pre-emption turns on whether the goals of the federal statute are frustrated by the effect of the state law.").  The Supreme Court instructed that, in obstacle preemption

cases, "there is no federal pre-emption in vacuo, without a constitutional text or a federal statute to assert it." P.R. Dep't of Consumer Affairs v. Isla Petroleum Corp., 485 U.S. 495, 503 (1988). See Gade v. Nat'l Solid Wastes Mgmt. Assoc., 505 U.S. at 98. A reviewing court must still "examine the explicit statutory language and the structure and purpose of the statute." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990). In 2000, the Supreme Court decided Geier v. Am. Honda Motor Co., 529 U.S. 861 (2000), which held, by a five-to-four vote, that a federal regulation which permitted, but did not require, airbags to be installed in passenger vehicles preempted claims that a car was defective because it lacked an airbag. See 529 U.S. at 874. The majority found: "The rule of state tort law for which petitioners argue would stand as an 'obstacle' to the accomplishment of [the federal regulation's] objective. And the statute foresees the application of ordinary principles of pre-emption in cases of actual conflict. Hence, the tort action is pre-empted." 529 U.S. at 886. Justice Stevens, in his dissenting opinion, expressed a desire to eliminate obstacle preemption. He argued that the presumption against preemption

> serves as a limiting principle that prevents federal judges from running amok with our potentially boundless (and perhaps inadequately considered) doctrine of implied conflict pre-emption based on frustration of purposes -- i.e., that state law is pre-empted if it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

Geier v. Am. Honda Motor Co., 529 U.S. at 907-08 (Stevens, J., dissenting).

The Supreme Court has now begun to back away from finding implied preemption based on an alleged conflict with the purposes underlying federal regulations. In 2003, the Supreme Court issued a unanimous decision in Sprietsma v. Mercury Marine, 537 U.S. 51 (2003), rejecting implied conflict preemption of state law claims that a boat engine was defective because it lacked a propeller guard. See 537 U.S. 51 (2003). In 2008, in Altria Group. Inc. v. Good, the Supreme Court rejected the plaintiffs' obstacle-preemption claim that the Federal

Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331-41, preempted a similar state act, see

Maine's Unfair Practices Act, Me. Rev. Stat. Ann., Tit. 5, § 207 (2008), because it presented an

obstacle to the Federal Trade Commission's longstanding policy of encouraging consumers to

rely on representations of tar and nicotine content based on an approved methodology.  See

Altria Group. Inc. v. Good, 555 U.S. at 90.  In 2009, in Wyeth v. Levine, 555 U.S. 555 (2009),

six Justices of the Supreme Court, including Justices Breyer and Kennedy, who joined in the

majority decision in Geier v. Am. Honda Motor Co., rejected the plaintiff's two implied

preemption arguments -- impossibility preemption and obstacle preemption.  See Wyeth v.

Levine, 555 U.S. at 581.  The Supreme Court held that

> it is not impossible for Wyeth to comply with its state and federal law obligations
> and that Levine's common-law claims do not stand as an obstacle to the
> accomplishment of Congress' purposes in the [Federal Food, Drug, and Cosmetic
> Act, 21 U.S.C.A. §§ 301, 321, 331-337, 341-350, 361-364, and 381-399; 21
> C.F.R. § 201.80(e) ("FDCA")].

Wyeth v. Levine, 555 U.S. at 581.  In so ruling, Justice Stevens, writing for the majority,

narrowly limited Geier v. Am. Honda Motor Co. to its facts, stating that the Supreme Court

based its decision in that case on the "complex and extensive" history of the substantive

regulation at issue.  Wyeth v. Levine, 555 U.S. at 566.  The Supreme Court rejected obstacle

preemption, stating: "If Congress thought state-law suits posed an obstacle to its objectives, it

surely would have enacted an express pre-emption provision at some point during the FDCA's

70-year history."  Wyeth v. Levine, 555 U.S. at 609.  Justice Stevens quoted Justice O'Connor's

explanation in Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141 (1989): "The case

for federal pre-emption is particularly weak where Congress has indicated its awareness of the

operation of state law in a field of federal interest, and has nonetheless decided to stand by both

concepts and to tolerate whatever tension there is between them."  Wyeth v. Levine, 555 U.S. at

575 (quoting Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. at 166-67).

Of particular import for the current status of implied obstacle preemption is Justice

Thomas' concurring opinion in Wyeth v. Levine, in which he wrote:

> I write separately, however, because I cannot join the majority's implicit endorsement of far-reaching implied pre-emption doctrines. In particular, I have become increasingly skeptical of this Court's "purposes and objectives" pre-emption jurisprudence. Under this approach, the Court routinely invalidates state laws based on perceived conflicts with broad federal policy objectives, legislative history, or generalized notions of congressional purposes that are not embodied within the text of federal law. Because implied pre-emption doctrines that wander far from the statutory text are inconsistent with the Constitution, I concur only in the judgment.

555 U.S. at 583 (Thomas, J., concurring in the judgment).  Justice Thomas stressed his concern:

> Under the vague and potentially boundless doctrine of purposes and objectives pre-emption . . . the Court has pre-empted state law based on its interpretation of broad federal policy objectives, legislative history, or generalized notions of congressional purposes that are not contained within the text of federal law . . . . Congressional and agency musings, however, do not satisfy the Art. I, § 7 requirements for enactment of federal law and, therefore, do not pre-empt state law under the Supremacy Clause.

Wyeth v. Levine, 555 U.S. at 587.  Justice Thomas emphasized that, when analyzing federal

statutes' or regulations' preemptive effect, "[e]vidence of pre-emptive purpose must be sought in

the text and structure of the provision at issue" to comply with the Constitution.  555 U.S. at 588

(citing CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993)).  Justice Thomas, writing for

the five-to-four majority in PLIVA, Inc. v. Mensing, 564 U.S. 604 (2011), recently concluded,

however, that conflict preemption required the preemption of inconsistent state laws on generic

drug labeling which conflicted with the respective federal law, because it was impossible to

comply with both.  See 564 U.S. at 617-618.  The Supreme Court sought to reconcile Wyeth v.

Levine, however, recognizing that the respective statutory schemes in each case was

distinguishable.  See PLIVA, Inc. v. Mensing, 564 U.S. at 626 ("It is beyond dispute that the federal statutes and regulations that apply to brand-name drug manufacturers are meaningfully different than those that apply to generic drug manufacturers.").

Moreover, the Supreme Court has put renewed emphasis on the presumption against preemption.  See Wyeth v. Levine, 555 U.S. at 565 n.3.  "In areas of traditional state regulation, [the Supreme Court] assume[s] that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest."  Bates v. Dow Agrosciences, LLC, 544 U.S. at 449 (internal quotation marks omitted).  If confronted with two plausible interpretations of a statute, the court has "a duty to accept the reading that disfavors pre-emption."  Bates v. Dow Agrosciences, LLC, 544 U.S. at 449.  See Wyeth v. Levine, 555 U.S. at 565; Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 518 (1992)(plurality opinion).

In Arizona v. United States, the Supreme Court once again emphasized the importance of clear Congressional intent when applying obstacle preemption.  See 132 S. Ct. 2492 (2012). The Supreme Court struck down an Arizona immigration law's provisions that would penalize aliens who sought, or engaged in, unauthorized employment, because it "would interfere with the careful balance struck by Congress with respect to unauthorized employment of aliens."  132 S. Ct. at 2505.  With Justice Kagan taking no part in the consideration or decision, Justice Kennedy, writing for a five-to-three majority, which included Chief Justice Roberts and Justices Ginsburg, Breyer, and Sotomayor, wrote: "The correct instruction to draw from the text, structure, and history of [the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1101] is that Congress decided it would be inappropriate to impose criminal penalties on aliens who seek or engage in unauthorized employment."  Arizona v. United States, 132 S. Ct. at 2505.  The Supreme Court ruled that Congressional intent is clear; Congress considered and rejected penalizing aliens who

sought unauthorized employment.  See 132 S. Ct. at 2504.  Federal immigration law therefore preempted the Arizona law that penalized aliens seeking unauthorized employment, because it created a penalty that Congress had clearly and intentionally omitted.  See 132 S. Ct. at 2505.

The Tenth Circuit has recognized federal preemption of state law in three categories: (i) when a federal statute expressly preempts state law ("express preemption"); (ii) where Congress intends to occupy a field ("field preemption"); and (iii) where a state law conflicts with a federal law ("conflict preemption").  Colo. Dep't of Pub. Health & Env't v. United States, 693 F.3d 1214, 1222 (10th Cir. 2012).  As the defendant in Colo. Dep't of Pub. Health & Env't v. United States, the United States invoked only conflict preemption in moving to dismiss Colorado's claims against it; the Tenth Circuit therefore did not address field preemption.  See 693 F.3d at 1222.  "To avoid conflict preemption, 'it is not enough to say that the ultimate goal of both federal and state law is the same.  A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach this goal."  Chamber of Commerce v. Edmondson, 594 F.3d 742, 769 (10th Cir. 2010)(quoting Int'l Paper Co. v. Ouellette, 479 U.S. 481, 494 (1987)(alterations and citation omitted)).  In Colo. Dep't of Pub. Health & Env't v. United States, the state of Colorado created a schedule for the United States to follow in the destruction of hazardous waste stored in the state, in an attempt to prohibit the storage of hazardous waste within the state.  See 693 F.3d at 1223.  The Tenth Circuit held that the state statute creating this schedule was in conflict with a statute which Congress passed, mandating a deadline for the destruction of the materials.  See 693 F.3d at 1224.  The Tenth Circuit reasoned that allowing Colorado to set a deadline for the destruction of the materials would impede the flexibility which Congress had intended in its deadline.  See 693 F.3d at 1224.  Because the Colorado deadline would interfere with the method that Congress had intended for the waste

disposal, the Tenth Circuit concluded that the state law was in conflict with the federal law and, therefore, that the federal law preempted Colorado's schedule.  See 693 F.3d at 1224.  See also Pueblo of Pojoaque v. New Mexico, 2016 WL 6405927, at *50-55 (D.N.M. 2016)(Browning, J.)(concluding that the Indian Gaming Regulatory Act of 1988, 25 U.S.C. §§ 2701-2721, does not preempt off-reservation regulatory enforcement actions against non-Indian third-party entities).

### NEW MEXICO LAW REGARDING BREACH-OF-CONTRACT CLAIMS

A contract is a legally enforceable promise that must consist of an offer, an acceptance, consideration, and mutual assent.  See UJI 13-801 NMRA.  A person may breach a contract by failing to perform a contractual obligation when the performance is required, unless that performance is otherwise excused.  See UJI 13-822 NMRA.  Incomplete performance is a breach of contract.  See Cochrell v. Hiatt, 1981-NMCA-152, ¶¶ 1-9, 638 P.2d 1101, 1103-04 (holding that, where the contract called for the roof to be restored to a "healthy" state and guaranteed the work for twenty-five years, because the roof leaked within the twenty-five year period, the defendant's performance was incomplete, and the defendant was in breach of the contract). Under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of a contract, breach of the contract, causation, and damages."  Abreu v. N.M. Children, Youth and Families Dep't, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011)(Browning, J.).

> [A] complaint on breach of contract must allege: (1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach.

McCasland v. Prather, 1978-NMCA-098, ¶ 7, 585 P.2d 336, 338.

Applying these principles in Armijo v. N.M. Dep't of Transp., 2009 WL 1329192 (D.N.M. 2009)(Browning, J.), the Court found that a plaintiffs' allegations failed to state a claim

for breach of contract.  See 2009 WL 1329192, at *8.  In support of the breach-of-contract claim, the plaintiff asserted that "the Department would follow state employment policies and procedure, and that the Department terminated him in breach of those policies without just cause."  2009 WL 1329192, at *7.  The Court noted that the plaintiff did not "indicate what contractual provisions or employment policies the Department breached," and did not say "to what his employment contract entitles him or of what the Department deprived him."  2009 WL 1329192, at *7.  The Court concluded that there was "not enough . . . to determine whether, if taken as true, the Complaint's allegations would support claims for breach of contract."  2009 WL 1329192, at *8.  On the other hand, the Court has previously determined that a pro se plaintiff sufficiently alleged that his counsel breached a contract for legal representation by alleging that his former counsel promised to represent the plaintiff at forfeiture proceedings, that the plaintiff paid the counsel, and that the counsel failed to represent the plaintiff.  See Archuleta v. City of Roswell, 2012 WL 4950324, at **16-17 (D.N.M. 2012)(Browning, J.).

"Additionally, in spite of the general bar on punitive damages for breach-of-contract cases, the Supreme Court of New Mexico has recognized that punitive damages may be recoverable under some circumstances for a breach of contract."  Anderson Living Trust v. ConocoPhillips Co., LLC, 2013 WL 3456913, at *42 (D.N.M. 2013)(Browning, J.).   The Supreme Court of New Mexico stated in Romero v. Mervyn's, 1989-NMSC-081, ¶ 23, 784 P.2d 991, 998: "Our previous cases clearly establish that, in contract cases not involving insurance, punitive damages may be recovered for breach of contract when the defendant's conduct was malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for the plaintiff's rights."  1989-NMSC-081, ¶ 23, 784 P.2d at 998.  Punitive damages are not available when they are "predicated solely on gross negligence.  In addition to, or in lieu of, such

negligence there must be evidence of an evil motive or a culpable mental state." Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, ¶ 25, 880 P.2d 300, 308 (internal quotation marks omitted). The Supreme Court of New Mexico has defined "reckless disregard" sufficient for an award of punitive damages as "when the defendant knows of potential harm to the interests of the plaintiff but nonetheless utterly fails to exercise care to avoid the harm." Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, ¶ 26, 880 P.2d at 308 (citation and secondary quotations omitted). A defendant does not act with reckless disregard to a plaintiff's rights merely by failing "to exercise even slight care," absent the requisite "culpable or evil state of mind." Paiz v. State Farm Fire & Cas. Co., 1994-NMSC-079, ¶ 26, 880 P.2d at 308 (citation and secondary quotations omitted). The New Mexico Civil Jury Instructions define the elements necessary for an award of punitive damages for a breach of contract as follows:



> If you find that _____ (*name of party making claim for punitive damages*) should recover compensation for damages, and if you further find that the conduct of _____ (*name of party whose conduct gives rise to a claim for punitive damages*) was [malicious], [reckless], [wanton], [oppressive], or [fraudulent], then you may award punitive damages.

UJI 13-861 NMRA.

## NEW MEXICO LAW REGARDING CONTRACT INTERPRETATION

In contract cases, "the role of the court is to give effect to the intention of the contracting parties." Bogle Farms, Inc. v. Baca, 1996-NMSC-051, ¶ 22, 925 P.2d 1184, 1190. "The primary objective in construing a contract is not to label it with specific definitions or to look at form above substance, but to ascertain and enforce the intent of the parties as shown by the contents of the instrument." Bogle Farms, Inc. v. Baca, 1996-NMSC-051, ¶ 22, 925 P.2d at 1190 (citing Shaeffer v. Kelton, 1980-NMSC-117, ¶ 6, 619 P.2d 1226, 1229). "The parol evidence rule 'bars admission of evidence extrinsic to the contract to contradict and perhaps even supplement the

writing.'"  Memorial Med. Ctr., Inc. v. Tatsch Const., Inc., 2000-NMSC-030, ¶ 16, 12 P.3d 431, 437 (citation omitted).  On the other hand, New Mexico has "adopted the contextual approach to contract interpretation, in recognition of the difficulty of ascribing meaning and content to terms and expressions in the absence of contextual understanding." Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 10, 845 P.2d 1232, 1235 (citation and internal quotation marks omitted).  See Pedroza v. Lomas Auto Mall, Inc., 2013 WL 4446770, at *18 (D.N.M. 2013)(Browning, J.).

"The question whether an agreement contains an ambiguity is a matter of law."  Hartnett v. Papa John's Pizza USA, Inc., 912 F. Supp. 2d 1066, 1092 (D.N.M. 2012)(Browning, J.).  See Mark V., Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d at 1235 (citing Levenson v. Mobley, 1987-NMSC-102, ¶ 7, 744 P.2d 174, 176).  When the "evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law."  Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d at 1235.  A contract "is not rendered ambiguous merely because a term is not defined; rather, the term must be interpreted in its usual, ordinary, and popular sense . . . and may be ascertained from a dictionary."  Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 8, 127 P.3d 1111, 1113 (internal quotation marks omitted)(applying principle to insurance policy).   "A contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions.  The mere fact that the parties are in disagreement on the construction to be given does not necessarily establish ambiguity."  Vickers v. N. Am. Land Dev., Inc., 1980-NMSC-021, ¶ 9, 607 P.2d 603, 606 (citation omitted).

"An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity."  Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d at 1235 (citation omitted). If the court concludes that the contract is "reasonably and fairly susceptible of different

constructions, an ambiguity exists."  Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d

at 1235 (citing Vickers v. North Am. Land Dev., Inc., 94 N.M. at 68, 607 P.2d at 606 (1980)).

> [I]n determining whether a term or expression to which the parties have agreed is
> unclear, a court may hear evidence of the circumstances surrounding the making
> of the contract and of any relevant usage of trade, course of dealing, and course of
> performance. . . .  It is important to bear in mind that the meaning the court seeks
> to determine is the meaning one party (or both parties, as the circumstances may
> require) attached to a particular term or expression at the time the parties agreed
> to those provisions.
>
> . . . .
>
> It may be that the evidence presented is so clear that no reasonable person would
> determine the issue before the court in any way but one.  In that case, to the extent
> the court decides the issue, the question then may be described as one of law.

C.R. Anthony Co. v. Loretto Mall Partners, 1991-NMSC-070, ¶ 17, 817 P.2d 238, 242-44

(affirming the trial court because it "considered all evidence adduced in response to the motion

for summary judgment, including collateral or extrinsic evidence of the circumstances

surrounding the execution of the lease amendment, and quite properly found no

ambiguity")(citations and footnote omitted).  In addition, in determining whether an ambiguity

exists,

> [a] court may employ the many rules of contract interpretation that do not depend
> on evidence extrinsic to the contract.  See, e.g., Smith v. Tinley, 100 N.M. 663,
> 665, 674 P.2d 1123, 1125 (1984) (reasonable interpretation of contract is
> favored); Schultz & Lindsay Constr. Co. v. State, 83 N.M. 534, 536, 494 P.2d
> 612, 614 (1972) (uncertainties construed strictly against drafter); Id. at 535, 494
> P.2d at 613 (each part of contract is to be given significance according to its place
> in the contract so as to give effect to the intentions of the parties).

C.R. Anthony Co. v. Loretto Mall Partners, 1991-NMSC-070, ¶ 17 n.5, 817 P.2d at 244 n.5.

Once the court concludes that an ambiguity exists, the resolution of that ambiguity becomes a

question of fact.  See Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶¶ 12-13, 845 P.2d at 1235.

To decide the meaning of any ambiguous terms, "the fact finder may consider extrinsic evidence

of the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent."   Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 13, 845 P.2d at 1236.   "[I]f the court finds ambiguity, the jury (or court as the fact finder in the absence of a jury) resolves the ambiguity as an issue of ultimate fact before deciding breach and damages."   C.R. Anthony Co. v. Loretto Mall Partners, 1991-NMSC-070, ¶ 11, 817 P.2d at 241. As this Court stated in Great Am. Ins. Co. of New York v. W. States Fire Protection Co., 730 F. Supp. 2d 1308 (D.N.M. 2009)(Browning, J.):

> In Mark V, Inc. v. Mellekas, the Supreme Court of New Mexico summarized the circumstances under which it is appropriate for a district court to construe a contract as a matter of law, and when a district court should find that a contract is ambiguous and leave construction of the contract to a jury.   According to the Supreme Court of New Mexico in Mark V, Inc. v. Mellekas, a district court may take extrinsic evidence to determine whether a contract is ambiguous, and "if the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law.   If the court determines that the contract is reasonably and fairly susceptible of different conclusions, an ambiguity exists."

730 F. Supp. 2d at 1314 n.1.   See generally, ABQ Uptown, LLC v. Davide Enterprises, LLC, 2015 WL 8364799, at *1 (D.N.M. 2015)(Browning, J.)(holding a hearing pursuant to the guidance under Mark V, Inc. v. Mellekas, 1993-NMSC-001, in its interpretation of a contract in New Mexico).

## NEW MEXICO LAW REGARDING THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement."   Watson Truck & Supply Co., Inc. v. Males, 1990-NMSC-105, ¶ 12, 801 P.2d 639, 642 (citations omitted).   "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement."   Watson Truck & Supply Co. v. Males, 1990-NMSC-105, ¶ 12, 801 P.2d at 642

(internal quotation marks omitted).  "The breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party."  Sanders v. FedEx Ground Package Sys., 2008-NMSC-040, ¶ 7, 188 P.2d 1200, 1203 (secondary quotations omitted).  The Supreme Court of New Mexico has expressed reluctance, however, to use the covenant of good faith and fair dealing "under circumstances where . . . it may be argued that from the covenant there is to be implied in fact a term or condition necessary to effect the purpose of a contract."  Watson Truck & Supply Co. v. Males, 1990-NMSC-105, ¶ 12, 801 P.2d at 642.

> "Generally, in the absence of an express provision on the subject, a contract contains an implied covenant of good faith and fair dealing between the parties. Under the implied covenant of good faith and fair dealing, courts can award damages against a party to a contract whose actions undercut another party's rights or benefits under the contract.  Our Supreme Court has nevertheless refused to apply this implied covenant to override an express at-will termination provision in an integrated, written contract."

Elliott Indus. Ltd. P'Ship v. BP Am. Prod. Co, 407 F.3d 1091, 1114-15 (10th Cir. 2005)(quoting Kropinak v. ARA Health Servs., Inc., 2001-NMCA-081, ¶¶ 3-4, 33 P.3d 679, 680-81)(secondary citations omitted).

New Mexico has recognized that a cause of action for breach of the covenant of good faith and fair dealing sounds in contract.  See Bourgeous v. Horizon Healthcare Corp., 1994-NMSC-038, ¶¶ 15-20, 872 P.2d 852, 856-57.  The Supreme Court of New Mexico has also explained that tort recovery for breach of the covenant of good faith and fair dealing is permissible only where a special relationship exists, such as between an insurer and its insured. See Bourgeous v. Horizon Healthcare Corp., 1994-NMSC-038, ¶¶ 15-20, 872 P.2d at 856-57. The "relationship of insurer and insured is inherently unbalanced; the adhesive nature of insurance contracts places the insurer in a superior bargaining position."  Bourgeous v. Horizon

Healthcare Corp., 1994-NMSC-038, ¶ 17, 872 P.2d at 857 (citations and internal quotation marks omitted).  Similarly, the Court of Appeals of New Mexico has held that "[t]he claim of breach of good faith and fair dealing sounds in contract, at least when no 'special relationship' such as that between an insured and insurer exists."  Heimann v. Kinder-Morgan CO2 Co., 2006-NMCA-127, ¶ 18, 144 P.3d 111, 117.

The Supreme Court of New Mexico has indicated that "the duty to not act in bad faith or deal unfairly" which an implied covenant of good faith and fear dealing within a contract imposes "becomes part of the contract and the remedy for its breach is on the contract itself." Bourgeous v. Horizon Healthcare Corp., 1994-NMSC-038, ¶ 17, 872 P.2d at 857  (discussing a Supreme Court of Arizona case, Wagenseller v. Scottsdale Memorial Hosp., 710 P.2d 1025, superseded by statute, and distinguishing this measure of damages from tort damages that are available for breach of this covenant in the insurance context).  In the insurance context, however, a plaintiff can recover tort damages for breach of this implied covenant.  See Bourgeous v. Horizon Healthcare Corp., 1994-NMSC-038, ¶ 17, 872 P.2d at 857.

The Supreme Court of New Mexico has noted that it does "not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in an at-will employment relationship."  Melnick v. State Farm Mut. Auto. Ins. Co., 1988-NMSC-012, ¶ 13, 749 P.2d 1105, 1109.  This limitation is because "there *is* no contract of employment upon which the law can impose the stated duty to exercise good faith and fair dealing."  Sanchez v. The New Mexican, 1987-NMSC-059, ¶ 13, 738 P.2d 1321, 1324 (emphasis in original).

## ANALYSIS

Med Flight is an FAA certified air ambulance provider rendering emergency ambulatory services in New Mexico.  Builders Trust is a New Mexico workers' compensation insurance

provider that provides workers' compensation insurance to a New Mexico employer whose employee was injured in a workplace injury and received emergency transport from Med Flight. After providing the relevant services, Med Flight billed Builders Trust, and, in this case, now alleges that Builders Trust has not paid the full amount and has refused to pay the outstanding balance.  This case is, thus, a contract dispute between the two parties, one of which happens to be an air carrier as the Airline Act defines that term.  Despite the Airline Act's relevance, however, it does not influence the existence of, and interpretation of, the Contract upon which the Complaint is premised.  Accordingly, there being no federal question or diversity[28] jurisdiction substantiated on the face of the Complaint, the Court does not have jurisdiction to preside over this case.  The Court thus remands the matter to the Eleventh Judicial District Court, County of McKinley, State of New Mexico, where Med Flight originally filed its Complaint, and will refrain from rendering an advisory opinion as to the merits issues the MTD and Motion for Judgment raise.[29]

---

[28]Neither party has alleged diversity jurisdiction in this case.  See Tr. at 27:11-22 (Kaemper)("We removed the case on federal question because the plaintiff's complaint was heavy on the application of the [Airline Act].  We didn't remove it on diversity, because there is not diversity in this case, so there is no amount of money that we would have to be worried about.").  Nor does it appear to exist, given the Court's review of the relevant pleadings, because Med Flight seeks, in addition to prejudgment interest from October 5, 2015, only $48,356.93 in damages, rendering the amount in controversy insufficient for resolution.  See 28 U.S.C. §1332 (providing, that diversity jurisdiction can exist only in "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs").

[29]The Court notes that the Second Restatement of Contracts, § 17(2)(a) (1979), provides: "A contractual right can be assigned unless . . . the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor . . . or materially increase the burden of risk imposed on him by his contract," and that, in other contexts, the Court of Appeals of New Mexico has favorably cited to the Second Restatement of Contracts, see Espinosa v. United of Omaha Life Ins. Co., 2006-NMCA-075, ¶ 27, 137 P.3d 631, as has the Supreme Court of New Mexico, see Sunnyland Farms, Inc. v. Central New Mexico Electric Cooperative, Inc., 2013-NMSC-017, ¶ 16, 301 P.3d 387.  Cf. Assocs. Loan Co. v. Walker, 1966-NMSC-137, ¶¶ 14-15, 416 P.2d 529 ("The fundamental rule of law . . . is that an assignee . . .

acquires by virtue of his assignment nothing more than the assignor had . . . .”).  In this case, the Court was, in light of that proposition,

> inclined to think that these can be assigned.  I'll give it some thought.  It seems to me that the fact that this is unusual in the sense there is a niche here in which nobody has really an incentive to assign is different from whether they can be assigned, so I'm inclined to think that I'll find that they can be assigned, but the right is not any greater than what Michael Woods had at the very beginning of this case.  The assignment can't expand it anymore.  And I may have to kind of stop around there.

Tr. at 32:15-33:19 (Court).  In contrast, Builders Trust has maintained throughout this litigation that, in this case, Woods could not assign his workers' compensation insurance-reimbursement benefits, because that assignment materially changes its duties and increases its risk in the contract.  See MTD Reply at 5.  Builders Trust makes that argument, primarily, because the assignment does not "merely change the person to whom payment was to be made.  Instead, it would subject [Builders Trust] to the risk of having to make a higher payment . . . [because the] contract with Murphy Builders requires it only to pay for reasonable and necessary health care services from a healthcare provider."  MTD Reply at 5.  Yet, Builders Trust's construction of the assignment in a way that expands the obligations of the parties does not comport with New Mexico law regarding the nature of an assignment, and the Court could not thus accept as valid Builders Trust's argument.  See Assocs. Loan Co. v. Walker, 1966-NMSC-137, ¶¶ 14-15, 416 P.2d 529 ("The fundamental rule of law . . . is that an assignee . . . acquires by virtue of his assignment nothing more than the assignor had . . . .").  Thus, this assignment, in New Mexico, does not unlawfully expand or alter the insurance providers' contractual obligations.

There is no issue, in general, with the assignment of an employee's workers' compensation insurance rights to a health care provider such as Med Flight.  Although the Tenth Circuit and the Supreme Court of New Mexico have not had occasion to consider this issue directly, the United States Court of Appeals for the Eleventh Circuit has, in a similar situation, held:

> If provider-assignees cannot sue the [Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA")] plan for payment, they will bill the participant or beneficiary directly for the insured medical bills, and the participant or beneficiary will be required to bring suit against the benefit plan when claims go unpaid. . . .  On the other hand, if provider-assignees can sue for payment of benefits, an assignment will transfer the burden of bringing suit from plan participants and beneficiaries to "providers[, who] are better situated and financed to pursue an action for benefits owed for their services." . . .  For these reasons, the interests of ERISA plan participants and beneficiaries are better served by allowing provider-assignees to sue ERISA plans.

Cagle v. Bruner, 112 F.3d at 1515.  As was the case for the ERISA issue before the Eleventh Circuit, the interests of persons entitled to workers' compensation benefits in New Mexico, as

well as the workers' compensation insurance providers, are "better served by allowing provider-assignees" seek reimbursement from the insurance providers, and sue for that reimbursement where it is not had.  Cagle v. Bruner, 112 F.3d at 1515.  Cf. Seaboard Fire & Marine Ins. Co. v. Kurth, 1980-NMCA-112, ¶ 633 P.2d 1229 (holding, in a different context where, as opposed to a provider-assignee, insured assigned his right to actions to workers' compensation insurer with a subrogation receipt, that the subrogation receipt -- although not investing insurer a right of subrogation -- provided insurer a right to reimbursement, making the insured a dispensable party).  While the Court need not and should not decide this issue of state law, because it lacks jurisdiction to do so, this reasoning was what motivated the Court's ruling at the hearing that the Court would conclude that there was a valid assignment and that the only remaining issues before the Court would be construction of the contract's terms.  The Court also notes that it has considered the reasonable costs for medivac transport on another occasion, and expressed skepticism at the high cost at issue in that case (but, ultimately did not decide the issue).  See United States v. Antonio, No. CR 15-0776 JB, Memorandum Opinion and Order at 8-11, filed February 15, 2017 (Doc. 55).

Also motivating the Court's tentative ruling at the hearing was its conclusion that provider-assignment in this context would not, as Builders Trust argued at the hearing, undercut the role of the Workers' Compensation Administration by allowing provider-assignees to bypass dispute resolution in the Workers' Compensation Administration.  See Tr. at 6:4-16 (Sherrell).  Builders Trust argued that, if air ambulances are going to rely on the Airline Act to bypass Workers' Compensation Administration jurisdiction, an insured's assignment to an air ambulance would be an end-around to the Workers' Compensation Administration's role in the system, because, unlike other providers, they would be litigating these disputes in court and not administratively.  See Tr. at 7:2-9 (Sherrell).  The parties, however, agreed that this context of air ambulance providers is a very particular and niche area in the workers' compensation field, because other providers had set rates and fee schedules that the Workers' Compensation Administration could apply to resolve disputes, see Tr. at 15:17 (Johnson); 7:18-19 (Sherrell), and the Court thus concluded that the use of state courts in air ambulance disputes would not otherwise lead to rampant annexation of the Workers' Compensation Administration, see Tr. at 32:15-33:19 (Court).

Another issue that the MTD and the Motion for Judgment raise, that the state court may need to address, is the relationship between the Airline Act and the McCarran-Ferguson Act.  Builders Trust argues that Med Flight advanced the argument before the Workers' Compensation Administration that the Airline Act preempted its jurisdiction, and in its Complaint restates that the Airline Act has a preemption provision, which inspires Builders Trust to argue -- in its Answer -- that the McCarran-Ferguson Act precludes the Airline Act's purported effect of preempting state insurance regulation, thus negating any argument which Med Flight raises regarding Airline Act preemption in the workers' compensation context.  See Answer at 6.  While the Airline Act does not specifically relate to the business of insurance, it nonetheless only prohibits states from enacting or enforcing laws that have a connection with, or reference to, an air carrier's rates, routes or services.  See 49 U.S.C. § 41713(b).  Indeed, in this context, one federal district court has held that, "[b]ecause workers compensation benefits are not insurance, . . . and the related air ambulance fee schedules were not enacted for the purpose of regulating the business of insurance. . . .  the McCarran-Ferguson Act does not apply to save these provisions

# I.   THERE IS NO SUBSTANTIAL FEDERAL QUESTION OF LAW AT ISSUE IN THIS CASE THAT IS SUFFICIENT TO CONFER JURISDICTION UPON THE COURT.

A federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."   28 U.S.C. § 1331.   Federal question jurisdiction exists when "a federal question is presented on the face of the plaintiff's properly

_____

from preemption by the [Airline Act]."  Valley Med Flight, Inc. v. Dwelle, 171 F. Supp. 3d 930, 947 (D.N.D. 2016)(Hovland, J.).  Although the Court may not agree with that court's conclusion, and there may be significant differences between New Mexico's workers' compensation scheme and North Dakota's, the Court still finds the Valley Med Flight, Inc. v. Dwelle analysis regarding preemption persuasive.  That is, further emphasizing the Court's ruling at the hearing is that, by the Complaint, "nobody is saying that this claim," or some regulation, is preempted.  Tr. at 27:25-28:4 (Court).  Absent a claim of Airline Act preemption of state insurance regulation, then, the McCarran-Ferguson Act does not even appear to meaningfully apply to the resolution of this dispute.  Cf. Valley Med Flight, Inc. v. Dwelle, 171 F. Supp. 3d at 942 ("There can be little question Section 23-27-04.10 effects Valley Med's prices and thus relates to price under the [Airline Act].  The clear intent of the legislation is to prevent air ambulance service providers, who are not participating providers, from imposing exorbitant fees on patients who wrongly assume their insurance will cover the charges and are not in a position to discover otherwise.  This type of consumer protection law is precisely the type of law Congress sought to preempt when it enacted the [Airline Act].").  The Contract at issue here differs.

Builders Trust, at the hearing, also argued -- for the first time -- that there may have been an anti-assignment clause in the Contract barring Woods' assignment of his workers' compensation benefits to Med Flight.  Med Flight, however, argued that Builders Trust had waived that argument by making a payment in response to the assignment.  The Court did not make a ruling on this issue at the hearing, because "if they weren't raised in the motion then I may not be able to decide those."  Tr. at 32:22-25 (Court).  The Court also notes, however, that strict enforcement of an anti-assignment clause in the emergency ambulatory context would raise serious issues regarding the ability to provide emergency medical care, and it thus was not likely that the intent of the parties entering into this Contract was to put people's safety at risk as the parties awaited Builders Trust's consent, and that the provision may be thus estopped from application in this context.  Nonetheless, it is also apparent that Builders Trust, having paid in response to the assignment a partial portion of Med Flight's bill, may already be estopped from relying on the provision.  See Hermann Hosp. v. MEBA Medical and Benefits Plan, 959 F.2d 569, 574-75 (5th Cir. 1992)("We hold that MEBA is estopped to assert the anti-assignment clause now because of its protracted failure to assert the clause when Hermann requested payment pursuant to a clear and unambiguous assignment of payments for covered benefits."), overruled on other grounds by Access Mediquip, LLC v. United Health Care Ins. Co., 698 F.3d 229 (5th Cir. 2012).

pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. at 392 (citing Gully v. First Nat'l Bank, 299 U.S. at 112-13). As "the master of the claim," the plaintiff may choose to sue in state court rather than in federal court "by exclusive reliance on state law." Caterpillar, Inc. v. Williams, 482 U.S. at 392.

Med Flight began this case in state court by filing its Complaint asserting breach of contract, and a breach of the covenant of good faith and fair dealing. See Complaint ¶¶ 1-24, at 1-5. To understand Med Flight's Complaint, some background regarding the Airline Act is helpful. The Airline Act preempts states from enacting any "law, regulation, or other provision having the effect of law related to price, route, or service of an air carrier." 49 U.S.C. § 41713(b). The Airline Act's purpose was the airline industry's deregulation to encourage competition and efficiency while lowering prices, expanding services, and enhancing safety, because Congress enacted the Airline Act after "determining that 'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices' as well as 'variety [and] quality . . . of air transportation services.'" Morales v. Trans World Airlines, Inc., 504 U.S. at 378 (quoting 49 U.S.C. §§ 1302(a)(4), 1302(a)(9)). The Airline Act, consequently, prohibits states and municipalities from implementing regulations that attempt to regulate air carriers' rates, routes or services -- with such purported regulation including the regulation of air ambulance operations, which constitute air carriers under the Airline Act. See, e.g., Med-Trans Corp. v. Benton, 581 F. Supp. 2d 721, 730-34 (discussing 49 U.S.C. § 41713(b)(1)'s application to air ambulances); Opinions of the Office of General Counsel for the U.S. Department of Transportation, ER-1:26 ("[A]n air ambulance is considered for Federal regulatory purposes an 'air carrier,' as that term is defined at 49 U.S.C. § 40102(a)(2)."); ER-1:33 ("[A]n air ambulance

service provider qualifies as an 'air carrier' . . . .").[30]  A state or non-federal entity, consequently, cannot set a fee schedule or other regulation that affects the rates, routes, or services which air ambulance providers employ, thus distinguishing air ambulance providers from their land-based counterparts.  See Med-Trans Corp. v. Benton, 581 F. Supp. 2d at 731.

Builders Trust, in timely fashion, removed the case to federal court in accordance with 28 U.S.C. § 1441(a), asserting federal jurisdiction, because: "Although Plaintiff dresses its claims for relief in the garb of state law, courts regularly look past the nominal causes of action to the litigation realities when deciding whether federal question jurisdiction exists," and that the Supreme Court has emphasized the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law."  Notice of Removal ¶¶ 9-10, at 3.  The Notice of Removal asserts that, "even though state law creates . . . causes of action, a case might still arise under the laws of the United States if . . . right to relief under state law requires resolution of a substantial question of federal law."  Notice of Removal ¶ 10, at 4 (internal quotation marks omitted).  In this case, the Notice of Removal argues:

> Plaintiff's Complaint alleges that Plaintiff was improperly reimbursed for its air ambulance services and that the [Airline Act] preempts any State statute, regulation, or law that allows for any reimbursement other than the total billed amount. . . .  Instead of looking at the New Mexico Workers' Compensation Act as its exclusive remedy, Plaintiff's request for relief rests entirely on the Court's interpretation of the [Airline Act]'s preemption provision.  A federal question is thus necessarily raised in the Complaint.

---

[30]Med Flight provides that it "operates under a 'Part 135' certificate from the Federal Aviation Administration held by Valley Med Flight," Complaint ¶ 3, at 3, making  it an "air carrier" under the Airline Act, because an "'air carrier' means a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation," 49 U.S.C. § 40102(a)(2), and that Valley Med Flight thus provides "'air transportation,' [which] means foreign air transportation, interstate air transportation, or the transportation of mail by aircraft," 49 U.S.C. § 40102(a)(5).

Notice of Removal ¶ 11, at 4.  The Notice of Removal also highlights that Med Flight had originally brought this matter before the Workers' Compensation Administration, "requesting a determination of contested billing dispute," Notice of Removal ¶ 1, at 1, but that, at the Workers' Compensation Administration hearing, Med Flight argued that the Workers' Compensation Administration did not have jurisdiction over the billing dispute, because the Airline Act "preempts any State regulation or review of its rates," resulting in the Workers' Compensation Administration's dismissal of the matter "with prejudice," Notice of Removal ¶ 1, at 1-2. Because "Plaintiff's claims are primarily based on its allegation that the [Airline Act] preempts state regulation" of workers' compensation insurance in the air ambulance context, the Removal thus asserts grounds for removal based on federal-question jurisdiction.  Notice of Removal ¶ 17, at 5-6.  Additionally, the Notice of Removal -- previewing the Answer's assertion of the defense of the McCarran-Ferguson Act, 15 U.S.C. § 1012(b), see Answer at 6, which "precludes federal statutes from preempting state regulation of insurance unless the federal statute specifically relates to the business of insurance" -- argues that "the [Airline Act] does not specifically relate to the business of insurance" and is thus does not apply to the present dispute, Notice of Removal ¶ 16, at 5.

As the Court understands Builders Trust's argument, then, this case turns on a substantial federal question, because the Airline Act preempts state contract actions that air ambulance providers bring against medical insurance providers, because that lawsuit is indirect state regulation of air carriers' rates, routes, or services, or, alternatively, because the McCarran-Ferguson Act otherwise disallows the Airline Act's import within the workers' compensation insurance context and that, for an air ambulance provider seeking workers' compensation reimbursement, "the Airline Deregulation Act cannot govern reimbursements due . . . under the

insurance policy at issue in th[at] case."   Answer at 6.   The Court must thus consider, specifically, whether on the face of Med Flight's Complaint, a substantial federal question involving the Airline Act or the McCarran-Ferguson Act arises for the Court's analysis of the parties' contractual obligations.   Thus, two species of argument for federal jurisdiction are at issue -- the first being that the Airline Act's broad preemptive effect authorizes federal review of this contract action, and the second being that Builders Trust has raised a defense that the Airline Act does not apply to workers' compensation insurance disputes, because the McCarran-Ferguson Act disallows federal regulation of state insurance practices.   The latter federal-jurisdiction theory is easier addressed and ultimately eliminated.

A defendant may not try to sneak a federal question through the back door by raising a federal defense, for "it is now settled law that a case may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar, Inc. v. Williams, 482 U.S. at 393 (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. at 12).   See Nicodemus v. Union Pac. Corp., 318 F.3d at 1236 ("It is well settled that '[a] defense that raises a federal question is inadequate to confer federal jurisdiction.'"   (quoting Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. at 808)). While a plaintiff is free to plead a federal question in his complaint, "a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." Caterpillar, Inc. v. Williams, 482 U.S. at 399.   Even the plaintiff can go only so far in attempting to invoke federal-question jurisdiction, because "[a]ny statements in the complaint which go beyond a statement of the plaintiff's claim and anticipate or reply to a

- 94 -

probable defense are to be disregarded" in deciding whether federal-question jurisdiction exists. Mescalero Apache Tribe v. Martinez, 519 F.2d at 481.   The Notice of Removal's reliance, therefore, on some type of reverse-preemption analysis regarding the Airline Act and the McCarran-Ferguson Act, which Builders Trust raises as a defense to the Complaint, does not -- without more -- suffice the jurisdictional showing Builders Trust must make.   That reverse-preemption argument means that the Airline Act could not, regardless of its preemption clause, purport to impact the field of workers' compensation insurance -- preemption that the Notice of Removal and Answer alleges that the Complaint has argued -- because the McCarran-Ferguson Act, which disallows such federal insurance regulation without express intent, counsels otherwise.   It is, indeed, settled law that a defense raised in response to a complaint's allegations -- without more -- cannot be the source of a federal court's federal-question jurisdiction.   This theory, accordingly, must fail, unless Builders Trust can point to a different source of federal-question jurisdiction appearing on the face of the Complaint.

The Court similarly cannot discern how Med Flight's right to relief under state law requires resolution of a substantial question of federal law under the Airline Act.   Ultimately, the primary legal issues that the Complaint raises are Woods' workers' compensation insurance rights and benefits were satisfactorily assigned to Med Flight, and whether Builders Trust's refusal to pay the full billed amount breached its contractual obligations -- should they exist. That is, by the Complaint, Med Flight does not assert that the Airline Act preempted or otherwise affected its contract claim against Builders Trust.   The Complaint mentions Airline Act preemption, in passing, but Med Flight then, in the Motion for Judgment, confirms that, unlike has been the case in other states, the New Mexico Workers' Compensation Act has specifically followed Congress' guidance by not seeking to regulate air ambulance carriers with any

semblance of a fee schedule; thus, the Complaint relies solely the terms of the Contract as its basis for this law suit.  See Motion for Judgment at 15-16.  Although it appears as though Med Flight sought to avoid the Workers' Compensation Administration's jurisdiction, in part, arguing that the Airline Act foreclosed its jurisdiction, Med Flight has not made a similar argument in its Complaint.  In fact, the Complaint's discussion of the Airline Act appears to be mere background for Med Flight's claim that it is owed the usual and customary reimbursement for its services.[31] Additionally, the Complaint is not requesting that the Court review or enjoin the Workers' Compensation Administration's decision finding it had no jurisdiction over Med Flight's action. Instead, Builders Trust seeks only to import Med Flight's argument from that administrative proceeding -- that the Airline Act somehow negates the Workers' Compensation Administration's jurisdiction to consider this matter -- as a source of federal jurisdiction, in contravention of the well-pleaded complaint rule.

In addition to the requirement that the federal question appear on the face of the complaint, a "plaintiff's cause of action must either be: (i) created by federal law; or (ii) if it is a state-created cause of action, 'its resolution must necessarily turn on a substantial question of federal law.'"  Nicodemus v. Union Pac. Corp., 318 F.3d at 1235 (quoting Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. at 808).  As for the second method, beyond the

---

[31]The Contract between Builders Trust and Murphy Builders states that Builders Trust will "pay promptly when due the benefits required of you by the workers compensation law." Contract at 1.  The New Mexico Worker's Compensation Act then, in turn, requires Murphy Builders -- the employer -- to "pay for reasonable and necessary health care services from a healthcare provider."  MTD Reply at 5 (citing New Mexico Workers' Compensation Act § 52-1-49(A)).  The New Mexico Worker's Compensation Act also provides that "a health care provider shall be paid his usual and customary fee for services rendered or at the maximum charge established pursuant to Subsection A of this section, whichever is less."  Motion for Judgment Reply at 6 (citing New Mexico Workers' Compensation Act § 52-4-5(B))(emphasis omitted). Thus, the resolution of the contractual obligations between the parties requires a determination of the usual and customary cost of the reasonable and necessary health care services that Med Flight provided in this case.

requirement of a "substantial" question of federal law at the heart of the case, the federal question must also be "actually disputed," and its resolution must be necessary to resolution of the case.  Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. at 314.  Finally, the exercise of federal-question jurisdiction must also be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."  Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. at 313.  In particular, the Court must determine whether recognition of federal-question jurisdiction will federalize a "garden variety" state law claim that will overwhelm the judiciary with cases that state courts traditionally hear.  Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. at 318-19 (explaining that "there must always be an assessment of any disruptive portent in exercising federal jurisdiction" by accepting "garden variety" state law claims).  See Hanselman, Supreme Court Federal Removal Jurisdiction, For the Defense at 25, 65 ("The most important consideration is whether removal would federalize a garden-variety tort, contract, or fraud claim, or whether there is some uniquely federal aspect of the case that, if removed, could be adjudicated in federal court without subjecting the federal courts to a flood of original filings or removals.").

The Supreme Court has underscored that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."  Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. at 813.  Indeed, the Supreme Court has "forcefully reiterated" that district courts must exercise "prudence and restraint" when determining whether a state cause of action presents a federal question because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system."  Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. at 810.  See Morris

v. City of Hobart, 39 F.3d at 1111.   The Court, in its review of the relevant pleadings and briefing in this case, concludes that the Airline Act is a "mere[ly] presen[t] . . . federal issue," which has no bearing on the underlying contract dispute in this case.

California Shock Trauma Air Rescue v. State Compensation Insurance Fund, 636 F.3d 538 (9th Cir. 2011), addressed a similar issue.   In that case, plaintiff air ambulance service provider, which provided services to employees who suffered work-related injuries, brought an action in federal court alleging that employers and insurance companies underpaid for its services.   See 636 F.3d at 540-41.   The plaintiff sought recovery of its full compensation due, relying on various state law contract theories, but anticipated that the defendant insurers would assert as a defense that they had paid the fee-schedule amount that California's workers' compensation law set.   See 636 F.3d at 541 (explaining that the employers paid a lesser amount, as specified "under the California's workers' compensation statute.   See Cal. Code Regs. tit. 8 § 9789.70 (now obsolete in relevant part)").   Accordingly, the plaintiff anticipated the need to argue that the Airline Act preempted California's workers' compensation law and thus argued that the lawsuit involved "significant federal issues."   636 F.3d at 542.

The ambulance service provider's argument did not persuade the Ninth Circuit, however. See 636 F.3d at 543.   The Ninth Circuit held that the well-pleaded complaint rule precludes the exercise of federal subject-matter jurisdiction over purely state law causes of action, because, under the well-pleaded complaint rule, federal subject-matter jurisdiction requires that a "right or immunity" created by the Constitution or federal law be an essential element of a cause of action. California Shock Trauma Air Rescue v. State Compensation Insurance Fund, 636 F.3d at 541 (citing Gully v. First National Bank, 299 U.S. at 112).   In California Shock Trauma Air Rescue v. State Compensation Insurance Fund, the plaintiff's federal preemption argument was, in

contrast, not an essential element of its state law claims, but merely a potential response to an anticipated defense.  See 636 F.3d at 541-42.   Indeed, the Ninth Circuit reiterated, Grable & Sons Metal Prods. v. Darue Eng'g & Mfg. stands for the proposition that a state law claim presents a justiciable federal question only if it satisfies the well-pleaded complaint rule and passes the "implicate[s] significant federal issues" test.  California Shock Trauma Air Rescue v. State Compensation Insurance Fund, 636 F.3d at 542.   According to the Ninth Circuit, that showing requires that the federal issue within a state law claim be "necessar[y], . . . actually disputed and substantial."  636 F.3d at 542 (citing Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. at 313).  That plaintiff's complaint, in contrast, was based entirely on California causes of action, none of which on their face turned on a federal issue, despite the presence of an Airline Act air carrier as a party to the lawsuit.  See 636 F.3d at 540-41.  Thus, the Ninth Circuit held that, because any federal Airline Act issue would be only a response to a defense that a defendant raises to rebut the plaintiff's state law claims, the Ninth Circuit held that there was no federal subject-matter jurisdiction.   See California Shock Trauma Air Rescue v. State Compensation Insurance Fund, 636 F.3d at 540-41 (citing Phillips Petroleum Co. v. Texaco, Inc., 415 U.S. 125 (1974)).

The Court considers the Ninth Circuit's analysis persuasive.  Indeed, in that case, the Airline Act's effect was more forceful, because at the center of the dispute was a benchmark fee-schedule that the California state legislature set governing air ambulance rates.  Here, it is the Contract's terms that are at issue, with those terms referencing the New Mexico Workers' Compensation Act's guidance regarding payment of the usual and customary fees for reasonable and necessary healthcare services.  Neither party in this action appears to contend that a state regulation impedes an air ambulance provider's ability to set its own rates, routes and schedules,

in accordance with market forces.  See, e.g., Motion for Judgment at 15 (stating that the New Mexico Workers' Compensation Act does not run awry of the Airline Act); Motion for Judgment Response at 13 (stating that Builders Trust "agrees that the [Airline Act ] does not preempt the Workers' Compensation Act" in New Mexico).  The Complaint, in fact, contends only that Builders Trust has failed to comply with its contractual obligations.  See Complaint ¶¶ 1-24, at 1-5.

Air Evac EMS, Inc. v. Texas considered a similar situation, which also counsels against the Court's jurisdiction to resolve the present dispute.  See 2016 WL 4259552 (W.D. Tex. 2016)(Sparks, J.).  In that case, an emergency transportation service provider, Air Evac, sued the Texas Department of Insurance Worker's Compensation Division, the Commissioner of Insurance, and the Commissioner of Workers' Compensation, in their official capacities, to challenge several provisions of the Texas Workers Compensation Act that limited the amount Air Evac could charge for its services, arguing that the Airline Act preempted Texas statutory provisions.  See Air Evac EMS, Inc. v. Texas, 2016 WL 4259552 at **1-5.  The district court concluded that

> federal courts have jurisdiction under 28 U.S.C. § 1331, the statutory grant of federal-question jurisdiction, to hear cases in which plaintiffs seek to enjoin allegedly preempted state regulation. . . .  As such, the jurisdictional question in this case is easy to resolve.  Because Air Evac "seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute," this Court has subject-matter jurisdiction under § 1331.

Air Evac EMS, Inc. v. Texas, 2016 WL 4259552 at *5.  The district court, however, ultimately dismissed Air Evac's complaint, concluding that, while it had subject-matter jurisdiction over the case, Air Evac did not meet the requirements of the Ex parte Young, 209 U.S. 123 (1908), exception to Eleventh Amendment immunity because it failed to show an imminent or threatened enforcement proceeding.  See Air Evac EMS, Inc. v. Texas, 2016 WL 4259552 at **6-9.

The district court in Air Evac EMS, Inc. v. Texas, then, determined it had jurisdiction in that case because the air ambulance provider sought "to enjoin allegedly preempted state regulation."  2016 WL 4259552 at *5.  Med Flight does not make a similar claim in its Complaint and indeed argues that the New Mexico Workers' Compensation Act does not present the same preemption issues present in California and Texas' workers' compensation acts.  Med Flight is not contesting an attempt by New Mexico to, either directly or indirectly, affect an air ambulance providers' rates, routes, or schedules.  Instead, as the Airline Act requires, New Mexico has not ventured into the realm of air ambulance regulation, leaving regulation of those entities to market forces.  Indeed, here the market forces are incidentally at work in the form of a contract dispute over the usual and customary rates that Med Flight charges for its services.

The Court, accordingly, is not satisfied that a substantial federal question of law is at issue in the resolution of this contract dispute.  Although the Airline Act limits what the state of New Mexico can do to regulate the rates, routes, and schedules of air ambulance providers in New Mexico, that limit does not stop air ambulance providers in New Mexico from contracting with workers' compensation insurance providers to ensure adequate ambulatory services.  Here, the dispute is whether such a contract exists between Med Flight and Builders Trust, and whether Builders Trust breached that contract.  Were the dispute concerned with challenging or enjoining the state of New Mexico's attempt to regulate the rates air ambulance providers charge across the state, as was the case in Air Evac EMS, Inc. v. Texas, the jurisdictional result in this case might be different.  See Air Evac EMS, Inc. v. Texas, 2016 WL 4259552 at *5.  Instead, as was the case in California Shock Trauma Air Rescue v. State Compensation Insurance Fund, Med Flight's Complaint is based entirely on New Mexico contract causes of action, none of which on

their face turn on a federal issue.  See <u>California Shock Trauma Air Rescue v. State</u>
<u>Compensation Insurance Fund</u>, 636 F.3d at 540-41.

      **IT IS ORDERED** that: (i) the claims in Med Flight's Complaint for Debt and Money

Due and Breach of Contract, filed November 10, 2016 (Doc. 1-4), are remanded to the Eleventh

Judicial District Court, County of McKinley, State of New Mexico, for further proceedings; and

(ii) Defendant Builders Trust of New Mexico's Partial Motion to Dismiss, filed November 17,

2016 (Doc. 4), and Plaintiff's Motion for Judgment on the Pleadings, filed December 6, 2016

(Doc. 10), are thus also remanded for the state court's determination.

 

                                            _____
                                          UNITED STATES DISTRICT JUDGE

*Counsel:*

Jeffrey A. Dahl
Andrew Lambert Johnson
Keleher & McLeod, P.A.
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Michael E. Kaemper
Shannon Sherrell
Rodey, Dickason, Sloan,
   Akin & Robb, P.A.
Albuquerque, New Mexico

     *Attorneys for the Defendant*